(No. 39233.—

THE PEOPLE *ex rel.* JOHN E. COONS, Petitioner, *vs.* MICHAEL J. HOWLETT, Auditor of Public Accounts, *et al.*, Respondents.

*Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.*

SCHAEFER, J., dissenting.

JOHN E. COONS, of Deerfield, *pro se.*

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and JOHN J. O'TOOLE, Assistant Attorneys General, of counsel,) for respondents.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

By an original *mandamus* proceeding in this court John E. Coons, a taxpayer, seeks to prevent the payment of a salary greater than $6,000 per annum to members of the 74th General Assembly for the two-year period for which they were elected.

The governing statute in force in 1963 provided for compensation at that rate. (Ill. Rev. Stat. 1963, chap. 63, par. 14.) On June 26 of that year the General Assembly passed H.B. 1369 increasing the rate to $7,500 per year, and on July 1 Senate Bill 1159 was approved by the Governor, making appropriations for salaries in the latter amount. On August 29 the Governor vetoed House Bill 1369. Petitioner Coons maintains that since the amending statute was vetoed the compensation remained by statutory authority at its pre-existing level of $6,000 per year, even though an appropriation was passed and approved for a rate of $7,500. He cites no authority for the proposition. The respondent State officers insist that the appropriation bill amended the statute by implication. This interpretation was adopted by the Attorney General of the State of Illinois in an opinion dated February 18, 1965, relying principally on *People ex rel.*

*Kaneland Community Unit School District* v. *Howlett,* 30 Ill.2d 128.

In the *Kaneland* case judgments rejecting the doctrine of governmental immunity had been rendered against the school district, in actions arising out of a school bus accident, and because they had the effect of imposing a unique burden on this particular district the legislature determined that the cost should be borne by the entire State in that instance. To this end a bill was passed and approved which appropriated $750,000, or so much thereof as might be necessary, from the motor fuel tax fund to the school district. In a *mandamus* proceeding to compel payment it was objected that the bill was invalid, that the Motor Fuel Tax Act prescribed how the funds should be expended, and that money could not be appropriated from the motor fuel tax fund by subsequent separate legislation. This court upheld the appropriation, however, under the rule that "where the new law is complete in itself without reference to the prior legislation, it is valid although the new law may modify or amend the existing statute by implication."

Also cited is *Tayloe* v. *Kjaer,* (D.C. cir.) 171 F.2d 343, which involved a question of title to certain real estate which had been purchased at a tax sale. The District of Columbia Code required, for a valid tax sale, that publication be made once a week for two weeks in one morning and one evening newspaper. The appropriation act for the year in question contained an appropriation for advertising notices but provided that it should not be available for advertising "more than once a week for two weeks in the regular issue of one morning *or* one evening newspaper published in the District of Columbia, *notwithstanding the provisions of existing law.*" (Italics supplied.) The property in question was included in a list and notice published once a week for two weeks in one newspaper only. It was held sufficient, the court observing that "for the period of that fiscal year, the proviso in legal effect acts through its specific

provisions as a pro tanto change of law." It was further pointed out that the proviso would have controlled even if it had purported to be a permanent change in existing law, since "Congress, of course, has undoubted power to permanently change existing law even in an appropriation act, and the fact that it is universally recognized as exceedingly bad legislative practice and is forbidden by the rules of both Houses of Congress does not subject it to judicial scrutiny."

We think a similar conclusion must follow in the case at bar. The appropriation act provides, in clear and unmistakable language, that "The following named sums, or so much thereof as may be necessary, respectively, are appropriated to pay the officers and members of the General Assembly and certain officers of the State government, hereinafter mentioned, for the biennium beginning July 1, 1963, as follows: * * * For members of the 74th General Assembly at $7,500 each per annum * * * $2,169,000." (Laws of 1963, p. 1394.) The evident intent of the legislature was that members were to receive $7,500 per year, and the expression of this intent in Senate Bill 1159 was approved by the Governor and became duly enacted into law.

Petitioner relies upon the words "or so much thereof as may be necessary," contending that they restrict the amount payable to that which had theretofore been authorized, namely $6,000 for each member per annum. It is argued that the quoted words prevent the bill from being complete in itself and require its construction in conjunction with the statute on compensation. The rule is invoked that statutes should be construed so as to give effect to each, and it is urged that this can be done here by construing the quoted provision as restricting payment of appropriated funds to the amount prescribed by the existing statute. We cannot accept the argument. The phrase "or so much thereof as may be necessary" means so much of the total amount as may be necessary to compensate the members at the rate prescribed therein, namely $7,500 per annum. The words

"at $7,500 each per annum" are plain and unequivocal, and are in direct conflict with the existing provision for a rate of $6,000 per annum. The later law constitutes an amendment by implication and its provisions must prevail.

The petitioner has not shown a right to the writ of *mandamus,* and the writ will be denied.

*Writ denied.*

Mr. JUSTICE SCHAEFER, dissenting:

The compensation of the Governor, Lieutenant Governor, members of the General Assembly, judges, heads of administrative departments and other state officers has consistently been fixed by general statutes. (See *e.g.* Ill. Rev. Stat. 1963, chap. 53, par. 1 (Governor); chap. 53, par. 1 (Lieutenant Governor); chap. 63, par. 14 (legislators); chap. 127, pars. 9.01—9.16 (directors of departments.) Whenever it was desired to change the compensation so fixed, the change has been made by amending these statutes. The opinion of the majority now holds that the salary of a state officer may be changed without amending the basic statute which establishes the compensation for the office, simply by appropriating a different amount for payment of the salary of the officer. This result can not be squared with the governing provisions of the constitution of Illinois. Indeed, the majority opinion makes no attempt to justify the result it reaches under the constitution. It ignores the constitution, and therefore I dissent.

Section 1 of "An Act to provide for and fix the compensation of the members of the General Assembly of the State of Illinois" provided in 1963: "Each member of the General Assembly shall receive for the two year period for which members of the House of Representatives of the General Assembly are elected, the sum of $6,000 per year." (Ill. Rev. Stat. 1963, chap. 63, par. 14.) A bill amending this section (H.B. 1369) to increase the compensation to $7,500 per year was passed by both houses of the 73rd Gen-

eral Assembly in 1963. It was vetoed by the Governor. (Veto Messages, 73rd Biennium, p. 60.) The bill making appropriations for the pay of state officers (S.B. 1159.) was prepared upon the assumption that the increase in the salary of members of the General Assembly would be passed and approved, and so it appropriated "For members of the 74th General Assembly at 7,500 each per annum . . . $2,169,000."

The majority opinion holds that the appropriation bill "constitutes an amendment by implication" of the statute which fixes the compensation of members of the General Assembly. Neither of the two decisions relied upon in the majority opinion has any bearing upon the problem presented in this case. The *Kaneland Community Unit School District* case, (30 Ill.2d 128.) did not involve the constitutional provisions that are controlling here, and the description of that case in the majority opinion demonstrates its irrelevance. The federal statute involved in *Tayloe* v. *Kjaer* (D.C. Cir.) 171 F.2d 543, is a classic example of the kind of log rolling legislation that is permitted under the constitution of the United States, but is expressly prohibited by the constitution of Illinois.

The principal difficulty with the notion of "amendment by implication" is that under section 16 of article IV of the constitution the appropriation bill could not legally have contained a provision expressly amending the statute which fixes the compensation of members of the General Assembly. The pertinent portion of section 16 is as follows: "Bills making appropriations for the pay of members and officers of the general assembly, and for the salaries of the officers of the government, shall contain no provision on any other subject." Moreover, the title of the appropriation bill expressed no purpose to amend the basic statute. (Const. art. IV, sec. 13.) I am not aware of any authority for the proposition that where an express amendment is specifically prohibited by the constitution, the same result may be achieved by amendment by implication.

The meaning of section 16 of article IV is that a bill which appropriates for the pay of state officers shall contain no subject other than appropriations for the pay of state officers. "The language employed in this section is plain and unmistakable, and was clearly intended to prevent the making of appropriations for the pay of salaries of officers of the State government in any bill which should contain a provision on any other subject than that of appropriations for the pay of members and officers of the General Assembly and for salaries of officers of the State government. It was no doubt the intention of the framers of the constitution, and of the people in adopting it, to make it impossible to influence legislation by the inclusion of the appropriation for the pay of members and officers of the General Assembly and for salaries of the officers of the State government, *which are fixed in amount and must be paid,* in bills which contain provisions upon any other subject whatever." *Fergus* v. *Russel,* 270 Ill. 304, 319. (Italics supplied.).

Section 16 of article 5 of the constitution provides: "Bills making appropriations of money out of the treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections, and if the Governor shall not approve any one or more of the items or sections contained in any bill, but shall approve the residue thereof, it shall become a law as to the residue in like manner as if he had signed it." But the power of the Governor extends only to an entire item; he can not veto a part of an item and approve the remainder. (*Fergus* v. *Russel,* 270 Ill. 304, 346-52.) He could not have stricken from the 1963 appropriation bill the words upon which the majority rely— "at 7,500 each per annum". His only alternative was therefore the potentially chaotic one of vetoing the entire appropriation for legislative salaries. The constitutional provision for an item veto can not coexist with the form of

legislation that the majority approves, and no reason is suggested to support the nullification of that provision of the constitution.

The constitution also provides that "The members of the general assembly shall receive * * * such compensation as shall be prescribed by law." (Const. art. 4, sec. 21.) Although an appropriation bill is enacted by the same process as is other legislation, it can not be a "law" within the meaning of this constitutional provision. Appropriations are effective only for a fiscal biennium and an additional three-month period. (Const. art. IV, sec. 18.) The fiscal biennium normally runs from July 1 until June 30 two years later. The case before us conforms to the fixed pattern —it ran from July 1, 1963 to June 30, 1965. If salaries of state officers are fixed by appropriation bills, there will, every two years, be a minimum period of three months during which there will be no law fixing those salaries. And if the legislative pattern of the past is repeated, the gap will as a practical matter always be nine months. Appropriation bills, which for a nine-month period every two years fail to specify any compensation whatever for legislators and other state officers, do not, in my opinion, meet the constitutional requirement that compensation "be prescribed by law."

What occurred with respect to the salaries of members of the General Assembly in 1963 is not an isolated instance. Not infrequently it happens that an attempt to increase the salary of a state officer is frustrated by failure to amend the basic statute that fixes his compensation; or, if the basic statute is amended, the appropriation is sometimes not increased accordingly. Indeed, with respect to the compensation of members of the General Assembly, the exact situation that now confronts us occurred in 1961. In that year the 72nd General Assembly passed House Bill 512, which would have amended the basic statute fixing the compensation of legislators by increasing it from $6,000 to $8,000

per annum. The Governor vetoed this bill. (Veto Messages, 72nd Biennium, p. 51.) The appropriation for pay of members of the General Assembly had been prepared in anticipation of the adoption and approval of House Bill 512, and it appropriated: "For members of the 73rd General Assembly, 29 at $6000 each per annum, and 206 at $8000 each per annum.......$2,936,000." (Session Laws of Illinois, 1961, S.B. 859, p. 1976.) Upon the reasoning of the majority opinion in this case the 1961 appropriation bill amended the basic statute by implication, and therefore salaries of members of the General Assembly were fixed at the annual rate of $8,000 when the General Assembly met in 1963.

Neither the Governor nor the General Assembly itself attributed to the 1961 appropriation bill the effect that the opinion of the majority now gives to the comparable item in the 1963 appropriation bill. In his message vetoing certain items contained in Senate Bill 859, the Governor stated: "In approving the remainder of Senate Bill 859, I should point out that there are several items in the Bill which do not correctly reflect the actual expenditures which the State will be authorized to make, but which cannot be vetoed because they are lumped with authorized appropriations. To cite two illustrations: Senate Bill 859 appropriates funds to pay the Director of Public Health $20,000 per annum, an increase of $5,000 over his present salary, but the Civil Administrative Code was not amended to authorize payment of this increased salary and the excess will therefore lapse; the appropriation for salaries of members of the General Assembly incorporates the pay raise enacted in H.B. 512, but I have vetoed that Bill, and the excess of $851,000 will therefore lapse. Additional line items also overstate the amount to be expended for the designated purpose." Veto Messages, 72nd Biennium, pp. 97, 98.

Similarly, members of the 73rd General Assembly did not consider that the 1961 appropriation bill had the effect

which the majority opinion now gives to the 1963 appropriation bill. They drew their salaries at the annual rate of $6,000. (See, Auditor of Public Accounts, Statement of Expenses of the 73rd General Assembly.) And when in 1963 the General Assembly made its appropriation "For members of the 73rd General Assembly, salaries payable in 1964 * * * $1,182,000" (Session Laws of 1963, p. 1394), the amount appropriated was not computed upon the basis of an annual salary of $8,000. Members of the General Assembly are authorized by statute to draw compensation for their full two years of service at once, or to receive it annually, as they choose. (Ill. Rev. Stat. 1963, chap. 63, par. 14.) Of the members of the 73rd General Assembly, 37 members of the House, and 8 members of the Senate, drew their full two-years' compensation, $12,000, during the first year of the biennium. The remaining 190 members of the General Assembly drew their compensation one year at a time. To compensate these members at the rate of $8,000 per annum would have required an appropriation of $1,520,000. Instead, the sum of $1,182,000 was appropriated, an amount which is slightly in excess of the exact amount necessary to compensate them at the statutory rate of $6,000 per annum.

If, as the majority opinion holds, the 1963 appropriation bill had the effect of amending by implication the basic statute fixing the compensation of legislators, the 1961 appropriation bill had the same effect, and the compensation of members of the 73rd General Assembly was fixed at $8,000 per annum. Under the decisions of this court and the appellate court, (*People ex rel. Lyle* v. *City of Chicago,* 360 Ill. 25; *People ex rel. Northrup* v. *City of Chicago,* 374 Ill. 94; *People ex rel. Northrup* v. *City of Chicago,* 308 Ill. App. 284.) the opinion of the majority not only improperly saddles the State with the unwarranted burden of approximately $700,000 directly attributable to the decision of this case, it also imposes an additional burden of approximately

$940,000 attributable to the 1961 appropriation. The full extent of the financial burden imposed upon the state by the majority opinion, insofar as the compensation of state officers other than legislators is concerned, must await detailed analysis of past appropriations.