(No. 61631.—)

PATRICK QUINN *et al.*, Appellants, v. JAMES H. DONNEWALD, State Treasurer, *et al.*, Appellees.

*Opinion filed June 5, 1985.—Rehearing denied September 27, 1985.*

Patrick Quinn, *pro se*, and Joel R. Monarch, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Michael J. Hayes, Jeffrey W. Finke, and Gladys M. Stevens, Assistant Attorneys General, of Chicago, of counsel), for appellees.

Sidley & Austin, of Chicago (Lee J. Schwartz, J. Andrew Schlickman, and Robert Burson, of counsel), for *amicus curiae* Roland De Marco.

Richard William Austin, Michael A. Coccia, Thomas A. Clancy, Michael W. Coffield, Richard H. Hoffman, Richard J. Prendergast, and Calvin Sawyier, of Chicago (Winston & Strawn, Baker & McKenzie, Mullen, Clancy & Associates, Coffield, Ungaretti, Harris & Slavin, Querrey, Harrow, Gulanick & Kennedy, Ltd., and Richard J. Prendergast, Ltd.), for *amici curiae* Illinois State Bar Association and the Chicago Bar Association.

JUSTICE WARD delivered the opinion of the court:

The determination by the legislature of appropriate compensation for public officials has been a continuing and vexing problem. The Compensation Review Act (Ill. Rev. Stat., 1984 Supp., ch: 63, pars. 901 through 906) (the Act) was passed to allow the legislature to receive formal recommendations for compensation, following public hearings conducted by a board created by the Act.

The plaintiffs, Patrick Quinn, Stanley Sedny, Virginia Calfee and Doris Stanis, brought an action in the circuit court of Cook County seeking a declaratory judgment holding the Act to be violative of the Constitution of Illinois and enjoining James Donnewald, State Treasurer, and Roland Burris, State Comptroller, from expending public funds pursuant to the Act. The circuit court granted the defendants' motion for summary judgment, and we allowed the plaintiffs' motion for direct appeal to this court under our Rule 302(b) (87 Ill. 2d R. 302(b)). *Amici curiae* briefs in support of the defendants were filed in this court on behalf of the Illinois State Bar Association, the Chicago Bar Association, and the Illinois Judges Association.

The General Assembly enacted the statute on July 17, 1984. The Act created the Compensation Review Board (the Board), the function of which is to recommend to the General Assembly the compensation for members of the General Assembly, judges, elected constitutional officers, and certain appointed officers of the State. The Act sets out various factors the Board is to consider in determining its recommendations for compensation. The Board is composed of 12 members, three of whom are appointed by the Speaker of the House of Representatives, three by the President of the Senate, and three each by the minority leaders of each house of the General Assembly. Each of those legislators appoints one

Board member to serve a one-year term, one member to serve a two-year term, and one to serve a three-year term. A member may be reappointed to a second term, but no member may serve more than a total of six years. All members of the Board serve without compensation.

Section 4 of the Act (Ill. Rev. Stat., 1984 Supp., ch. 63, par. 904) provides that the Board shall file a report of its recommendations with the House of Representatives, the Senate, the State Comptroller, and the Secretary of State. Reports are to be filed before May 1 of each even-numbered year. The Act provides that a majority of the members of each house of the General Assembly may vote to disapprove the report of recommendations "in whole or reduce it in whole proportionately" within 30 session days after the legislature next convenes following the filing of the report. If each house of the General Assembly votes to disapprove the report, or if the Board does not submit a report, and a new term commences for any official provided for in the Act, the salary for the new term will be the same as the salary for the just-completed term. If both houses decide not to disapprove the report, the salary recommendations will become effective.

The notion underlying the Act is not novel. At least 15 other jurisdictions have similar statutes or constitutional provisions under which a commission makes salary recommendations to the legislatures. Hawaii Const., art. III, sec. 9 (1983 Supp.); Idaho Const., art. III, sec. 23; Md. Const., art. III, sec. 15; Mich. Const., art. IV, sec. 12 (Supp. 1985); Okla. Const., art. V, sec. 21; Ariz. Rev. Stat. Ann., sec. 41—1902 (Supp. 1984); Colo. Rev. Stat., sec. 2—3—801 (1980); Del. Code, tit. 29, sec. 3301 (Supp. 1984); Iowa Code Ann., sec. 2A.1 (Supp. 1983); Ky. Rev. Stat. Ann., sec. 6.226 (Baldwin 1984); La. Stat. Ann., sec. 42.1401 (West Supp. 1985); Mass. Gen. Laws Ann., ch. 6, sec. 162 (1980); Mont. Code Ann., sec. 2—16—401

(1983); S.D. Codified Laws, sec. 3—8—1.1 (1980); Wash. Rev. Code, sec. 43.03.028 (1983).

The Act provides that the General Assembly had until January 9, 1985, to vote to disapprove in whole any initial report filed after the effective date of the Act or to vote to reduce it in whole and proportionately. The Board submitted an initial report of recommendations on December 10, 1984. The Senate voted to disapprove the report in whole on December 11, and the House voted to disapprove in whole on the following day. The Board reconvened on January 7, 1985, and that day submitted to each house of the General Assembly a report in which some of the recommendations had been reduced. On January 9, a majority of the members elected to the House voted to disapprove this report, but less than a majority of the members elected to the Senate voted to disapprove the report. Thus, the report was not disapproved by a majority of both houses of the General Assembly. On April 18, 1985, the General Assembly appropriated the funds for the salary increases recommended.

We consider first the defendants' contention that the plaintiffs lack standing under section 11—303 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 11—303) to challenge the validity of the Act. Section 11—303 states that a taxpayer has standing to bring an action to enjoin public officials from disbursing public funds, but the defendants argue that the standing given under section 11—303 is limited to a challenge of an appropriation act and does not extend to a challenge to the validity of the statute authorizing the appropriation. We disagree with the contention. Section 11—303 does not contain such a limitation, nor does section 11—301 (Ill. Rev. Stat. 1983, ch. 110, par. 301), which unequivocally states that any citizen has standing to enjoin the disbursement of public funds. Further, this court has held that the validity of a nonappropriation statute involving

the expenditure of public funds may be challenged by a taxpayer in an injunctive proceeding. See *Bode v. Barrett* (1952), 412 Ill. 204; *Snow v. Dixon* (1977), 66 Ill. 2d 443; *Krebs v. Thompson* (1944), 387 Ill. 471.

The plaintiffs offer a number of constitutional challenges to the Act. First, they contend that the Act is unconstitutional because it impermissibly delegates to the Board the power to determine the salaries of the State officials affected. The Constitution of Illinois provides that the salaries of legislators, judges, and executive officers shall be "provided" or "established" "by law." (Ill. Const. 1970, art. IV, sec. 11; Ill. Const. 1970, art. VI, sec. 14; Ill. Const. 1970, art. V, sec. 21.) These provisions, the plaintiffs say, require the legislature itself to set the salaries of these persons and prohibit the delegation of this responsibility to the Board. Their contention that the Act violates these provisions is erroneous. The Board simply makes recommendations; the General Assembly sets the salaries. Under the Act salaries are provided by law.

Delegate Wayne W. Whalen, the chairman of the Committee on Style, Drafting and Submission at the 1970 constitutional convention, described the significance of the term "by law" as used in the Constitution:

> "The reason for the addition of the words 'by law' was to point out to you that it was not the intent of the Committee of the Whole or the Substantive Committee that the General Assembly could act in any other way than the law-making process. As you know, the General Assembly can act by rule, it can act by resolution; that was not the intent. The intent was to use the entire law-making process as set out in the constitution, so to clarify this ambiguity we added the term 'by law' ***." (3 Record of Proceedings, Sixth Illinois Constitutional Convention 2180.)

The Act establishing the procedure for providing salaries was enacted through the "law-making process" and in

the normal legislative manner. It became law through the vote of a majority of both houses of the General Assembly and following presentment to the Governor for his action. The constitutional directive that salaries be provided or established by law was satisfied.

In *Pressler v. Simon* (D.D.C. 1976), 428 F. Supp. 302, 305-06, *aff'd sub nom. Pressler v. Blumenthal* (1978), 434 U.S. 1028, 54 L. Ed. 2d 776, 98 S. Ct. 758, the court considered the Federal Salary Act, which, resembling our statute, established a commission to recommend salary increases, following the President's approval, to the Congress. The Federal act provides that if neither house of Congress disapproves salary recommendations, the increases shall become effective. The court was required to interpret article I, section 6, of the Constitution of the United States, which provides that legislative salaries "shall \*\*\* be ascertained by Law." (U.S. Const., art. I, sec. 6.) In rejecting the contention of an unconstitutional delegation by Congress of its powers, the court observed:

> "At the outset it should be noted that when Congress passed the Acts governing its compensation it acted 'by law,' as plaintiff himself concedes. The suggestion is, though, that the ascertainment is by others, not by the Congress. \*\*\*
>
> \*\*\*
>
> Congress continues to be responsible to the public for the level of pay its members receive. There is no concealment; indeed publication of the suggested rate of pay occurs in advance of the pay level taking effect. Moreover, with the growing complexity of all governmental functions a reasonable effort to coordinate congressional pay with pay in the Executive and Judicial branches was certainly not intended to be foreclosed by the ascertainment phrase. Congress must always account to the people for what it pays itself, but the Founding Fathers did not contemplate the inflexibility and rigidity which plaintiff

seeks." (428 F. Supp. 302, 305-06.)

There was a summary affirmation without opinion by the Supreme Court of the court's holding. 434 U.S. 1028, 54 L. Ed. 2d 776, 98 S. Ct. 758.

This court has stated: "It is well settled that notwithstanding the rule that the General Assembly cannot delegate its general legislative power to others, it may authorize others to do things which it might properly do but cannot do as understandingly or as advantageously itself, if the authority thus granted is delimited by intelligible standards." (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 130; see also *Hill v. Relyea* (1966), 34 Ill. 2d 552; *Board of Education v. Page* (1965), 33 Ill. 2d 372.) Here, it is clear that the legislature's general legislative powers have not been delegated to the Board. The Board simply has been given the assignment of conducting studies and holding public hearings and then recommending compensation levels to the General Assembly for designated public officials. The Board was not given unrestricted authority to make recommendations. In the Act the General Assembly directs the Board in formulating its recommendations to consider the following factors:

(a) the skill required,

(b) the time required,

(c) the opportunity for other earned income,

(d) the value of public services as performed in comparable States,

(e) the value of such services as performed in the private sector in Illinois and comparable States based on the responsibility and discretion required in the office,

(f) the average consumer prices, commonly known as the cost of living,

(g) the overall compensation presently received by the public officials and all other benefits received,

(h) the interests and welfare of the public and the financial ability of the State to meet those costs, and

(i) such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of such compensation.

Further, of course, the General Assembly can reject by vote any report the Board may submit to it. We consider that it is plain that the authority given the Board is "delimited by intelligible standards." It is appropriate, too, to point out that the rejection by the General Assembly of the Board's recommendations in December convincingly demonstrated that it was not the legislature's intention to delegate its power to establish salaries.

Though not relevant, of course, to the question of the Act's validity, the defendants have observed that before salary changes can become effective the General Assembly must pass appropriation bills, which themselves are subject to the Governor's "item-reduction veto." They note that the absence of legislative disapproval of the Board's recommendations is not the final step in the process of effecting a salary change. An appropriation bill that must be passed by a majority of both houses of the General Assembly and signed by the Governor is required. The Act itself provides that an appropriations bill must follow:

"The General Assembly shall appropriate the funds necessary to pay the salaries set by the Board." Ill. Rev. Stat., 1984 Supp., ch. 63, par. 906.

The defendants note, too, that the General Assembly may decline to appropriate funds in the amount called for in a salary authorization statute. Citing *People ex rel. Coons v. Howlett* (1965), 33 Ill. 2d 304, 305-07, they say that the General Assembly may thus control and modify salary authorization statutes.

Another argument of the plaintiffs is that the procedure by which the legislature gives effect to the Board's recommendations violates the requirements of article IV, section 8(c), and article IV, section 9(a) and (b) of the Illi-

nois Constitution. Section 8(c) of article IV provides:

> "No bill shall become a law without the concurrence of a majority of the members elected to each house. Final passage of a bill shall be by record vote. In the Senate at the request of two members, and in the House at the request of five members, a record vote may be taken on any other occasion. A record vote is a vote by yeas and nays entered on the journal." (Ill. Const. 1970, art. IV, sec. 8(c).)

And sections 9(a) and (b) state:

> "(a) Every bill passed by the General Assembly shall be presented to the Governor within 30 calendar days after its passage. The foregoing requirement shall be judicially enforceable. If the Governor approves the bill, he shall sign it and it shall become law.
>
> (b) If the Governor does not approve the bill, he shall veto it by returning it with his objections to the house in which it originated. Any bill not so returned by the Governor within 60 calendar days after it is presented to him shall become law. If recess or adjournment of the General Assembly prevents the return of a bill, the bill and the Governor's objections shall be filed with the Secretary of State within such 60 calendar days. The Secretary of State shall return the bill and objections to the originating house promptly upon the next meeting of the same General Assembly at which the bill can be considered." (Ill. Const. 1970, art. IV, secs. 9(a), (b).)

The plaintiffs say that the recommendations' taking effect upon the legislature's decision not to reject the report violates these provisions, because, they assert, there is no provision for approval by both houses and a presentment to the Governor. As we observed above, the Act established the procedure followed here. The Act itself was, of course, passed by a majority of both houses of the General Assembly and was presented to the Governor for his possible veto. Too, the appropriation bill was passed by a majority of both houses and presented to and approved by the Governor. Thus, the require-

ments of article IV, section 8(c), and article IV, sections 9(a) and (b), have been satisfied. The defendants observe further that the effect of any recommendation the Board may make is restricted by article IV, section 9(d), which gives the Governor the "item-reduction veto," whereby the Governor may reduce or veto any single item within an appropriation bill, subject, of course, to an override by the legislature:

> "The Governor may reduce or veto any item of appro-priations in a bill presented to him. Portions of a bill not reduced or vetoed shall become law. An item vetoed shall be returned to the house in which it originated and may become law in the same manner as a vetoed bill. An item reduced in amount shall be returned to the house in which it originated and may be restored to its original amount in the same manner as a vetoed bill except that the required record vote shall be a majority of the mem-bers elected to each house. If a reduced item is not so re-stored, it shall become law in the reduced amount." Ill. Const. 1970, art. IV, sec. 9(d).

The plaintiffs contend also that section 6 of the Act requires that an appropriation bill be automatically passed, thereby unconstitutionally conferring on the Board the power, in effect, to make appropriations. Sec-tion 6 states that "[t]he General Assembly shall appro-priate the funds necessary to pay the salaries set by the Board." (Ill. Rev. Stat., 1984 Supp., ch. 63, par. 906.) We agree, however, with the trial court's sensible construc-tion that "shall" means simply that an appropriation bill is necessary, as it is in any other instance where State funds are to be disbursed. To interpret the quoted lan-guage as an open pledge or commitment by the General Assembly to make appropriations in the future would be clearly unreasonable.

The plaintiffs complain that the Act violates the ap-pointments clause of the Constitution of Illinois (Ill. Const. 1970, art. V, sec. 9(a)). The appointments clause

provides, *inter alia*, that the General Assembly has no power to appoint officers of the executive branch. The legislature's appointment of the Board's members does not violate the clause. The Board members are not officers of the executive branch. They act in the purely legislative area of salary changes by statutory means. The Board does not execute or administer law; it simply makes recommendations for compensation to the legislature pursuant to power delegated to it by the Act.

Citing *Immigration & Naturalization Service v. Chadha* (1983), 462 U.S. 919, 77 L. Ed. 2d 317, 103 S. Ct. 2764, the plaintiffs argue that disapproval of a Board's report by the legislature would constitute an illegal legislative veto of an executive action. The contention has no substance. First, the Board's report was not disapproved by the General Assembly, and, thus, the issue is not before us. Second, as stated above, the Board does not serve an executive function and *Immigration & Naturalization Service v. Chadha* has no relevance.

In addition to the constitutional contentions, the plaintiffs argue that the report of January 7, 1985, submitted by the Board and accepted by the General Assembly was a "subsequent report" under the Act and, therefore, could not be considered at that time by the General Assembly. They cite section 4 of the Act, which provides:

> "The Board shall file an initial report with the House of Representatives, the Senate, the Comptroller and the Secretary of State. Subsequent reports shall be filed therewith before May 1 in each even-numbered year thereafter \*\*\*." (Ill. Rev. Stat., 1984 Supp., ch. 63, par. 904.)

The plaintiffs say that after the Board's report of December 10, 1984, was disapproved by the General Assembly, any other report was, in effect, a "subsequent report" under the terms of the Act and could not be considered until May 1986. The plaintiffs say that section 4

permits the filing of only one report prior to January 9, 1985, and that the Board's report of January 7, 1985, is void.

The defendants' response is that the Act does not prohibit the filing of an amended report. They say that, under the Act, the Board had until January 9, 1985, to modify the report and submit it to the legislature. The defendants cite section 5 of the Act, which provides:

> "(a) If the Board fails to recommend a change in salary or the General Assembly disapproves the report as provided in subsection (b), and a new term for any officer provided for in this Act begins, the salary for the new term shall be the same as the salary in effect when the previous term ended.
>
>          \* \* \*
>
> For the initial report filed by the Board after this Act takes effect, the General Assembly may, by January 9, 1985, disapprove the report of the Board in whole, or reduce it in whole proportionately, after the report is ·filed \* \* \*." Ill. Rev. Stat., 1984 Supp., ch. 63, par. 905.

One infers from section 5 that an amended report could be submitted by the Board and accepted by the General Assembly prior to January 9, 1985. The circuit court, considering the question, correctly held:

> "[T]he language of Sec. 5(a) of the Act provides that existing salaries shall remain in effect if '\* \* \* the General Assembly disapproves the report as provided in subsection (b), *and* a new term \* \* \* begins.' Use of the emphasized word 'and' clearly indicates the deadline time for filing to be the beginning of a new term in office and any reports filed before the deadline are timely and appropriate for consideration."

It can be further observed that the action of the General Assembly in receiving the report of January 7, 1985, is not without significance. The fundamental of statutory construction is to ascertain the intent of the legislature. (*City of Springfield v. Board of Election Commissioners*

(1985), 105 Ill. 2d 336, 340-41; *People v. Beam* (1979), 74 Ill. 2d 240, 242.) The General Assembly that received the report of January 7 was, so far as its composition or membership was concerned, the very General Assembly that enacted the Act. That the General Assembly received and took action on the report of January 7 shows that the Board's submission of the report was consistent with the legislative intention.

There is a strong presumption of the constitutionality of a statute, and the burden of showing its invalidity is on the parties challenging it. That burden has not been met. *People v. La Pointe* (1981), 88 Ill. 2d 482, 499; *North Shore Post No. 21 v. Korzen* (1967), 38 Ill. 2d 231, 233.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*