THOMAS H. REECE *et al.*, Plaintiffs-Appellants, v. THE BOARD OF
EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—00—4040

Opinion filed March 14, 2002.

774

Lawrence A. Poltrock, Gregory N. Freerksen, and James B. Dykehouse, all of Witwer, Poltrock & Giampietro, of Chicago, for appellants.

Marilyn F. Johnson, Taryn Springs, James G. Ciesil, and Lee Ann Lowder, all of Board of Education, of Chicago, for appellee Board of Education of City of Chicago.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), for other appellees.

JUSTICE THEIS delivered the opinion of the court:

Plaintiffs Thomas H. Reece, Norma J. White, Pamelyn Massarsky, Michael J. Williams, Melvin Wilson, and Clifford Wagner (collectively, plaintiffs) brought this action against defendants Board of Education of the City of Chicago (Chicago Board of Education), Daniel W. Hynes, Ronald J. Gidwitz, Sandra M. Pellegrino, Marilyn McConachie, David Gomez, Connie Rogers, William E. Hill, Vincent J. Serritella, Janet Steiner, Illinois State Board of Education (State Board), and Glenn W. McGee (collectively, defendants), alleging that section 2—3.25g of the Illinois School Code (School Code) (105 ILCS 5/2—3.25g (West 1996)), which allows school districts to petition the State Board of Education for a waiver or modification of the School Code's mandates, is unconstitutional. They sought to enjoin the disbursement of funds to the Chicago Board of Education, pursuant to section 11—301 of the Code of Civil Procedure (735 ILCS 5/11—301 (West 2000)), until it complied with all mandates of the School Code, including the requirement of daily physical education. On the parties' cross-motions for summary judgment, the trial court granted defendants' motion, finding section 2—3.25g constitutional, and denied plaintiffs' motion.

Plaintiffs now appeal, arguing that (1) the physical education curriculum is protected from waiver by section 34—8.14(3) of the School

Code (105 ILCS 5/34—8.14(3) (West 1996)); (2) section 2—3.25g is unconstitutional because it modifies existing law without following procedural constitutional formalities; (3) section 2—3.25g constitutes an unconstitutional legislative veto; and (4) section 2—3.25g is an impermissible delegation of legislative authority to school boards. For the reasons set forth below, we affirm.

■ Public Act 89—3 (Pub. Act 89—3, § 5, eff. February 27, 1995) amended section 2—3.25g to provide a procedure whereby school districts may petition the State Board of Education for a waiver of most School Code mandates where "necessary to stimulate innovation or improve student performance." 105 ILCS 5/2—3.25g (West 1996). Under section 2—3.25g, waiver applications must demonstrate that the intent of the mandate can be addressed in a specific plan for improved student performance and school improvement. Within 15 days after approval by the local board of education following a public hearing, the application is submitted to the State Board of Education. 105 ILCS 5/2—3.25g (West 1996). The State Board reviews the applications and requests for completeness and compiles them in reports to be filed with the General Assembly before each May 1 and October 1. The General Assembly may disapprove the report of the State Board in whole or in part within 30 calendar days after each house of the legislature next convenes by adoption of a resolution by a record vote of the majority of the members of each house. If the General Assembly fails to disapprove any waiver request within such 30-day period, the waiver is deemed granted. A waiver remains in effect for up to five school years and may be renewed upon application by the school district. 105 ILCS 5/2—3.25g (West 1996).

In 1997, the Chicago Board of Education applied for a waiver pursuant to this section, for the eleventh and twelfth grades only, from the mandate in section 27—6 of the School Code requiring all students to engage in daily physical education. 105 ILCS 5/27—6 (West 1996). It was submitted in connection with the Chicago public schools "High School Redesign Project" to improve academic performance in Chicago high schools following the General Assembly's conclusion that the public schools were suffering an "education crisis." 105 ILCS 5/34—3.3 (West 1996).

The High School Redesign Project created a new two-year foreign language requirement and raised the mathematics requirement from two years to three and the science requirement from one year to three years. However, the project reduced the physical education requirement and mandated physical education courses for only the first two years of high school. Juniors and seniors could take physical education as an elective.

The Chicago Board of Education pursued the waiver in compliance with the procedural requirements of this statute, including providing notice and holding a public hearing. After approving the proposed waiver application, the Chicago Board of Education forwarded it to the State Board of Education. The State Board then determined that the application was complete and included it with waivers from other school districts in a report filed with the General Assembly. Following receipt and consideration of the State Board of Education's report, the General Assembly did not disapprove the Chicago Board of Education's waiver and, thus, the waiver was granted.

Before the Chicago Board of Education could implement its plan following approval of the waiver, a group of plaintiffs including several taxpayers, physical education teachers, a teachers' union, and parents of Chicago public school students filed the first lawsuit against the Chicago Board of Education. They sought a declaratory judgment that section 2—3.25g was invalid and an injunction preventing enforcement of the waiver. The trial court declared section 2—3.25g to be invalid and granted the injunction. The Chicago Board of Education appealed to the Illinois Supreme Court, which found that the plaintiffs lacked standing to bring the action and dismissed the appeal, but did not address the constitutionality of section 2—3.25g. *Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 724 N.E.2d 914 (2000).

Another group of plaintiffs then brought the present action, alleging that section 2—3.25g was unconstitutional and asked the trial court to enjoin the disbursement of public funds to the Chicago Board of Education until it complied with the statutory requirement of daily physical education. All parties then filed cross-motions for summary judgment. The trial court granted defendants' motion for summary judgment and denied plaintiffs' motion, holding section 2—3.25g constitutional. Plaintiffs then filed this timely appeal.

■ Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file present no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). When parties file cross-motions for summary judgment, they agree that no material issue of fact exists and that only a question of law is involved. *Subway Restaurants of Bloomington-Normal, Inc. v. Topinka*, 322 Ill. App. 3d 376, 381, 751 N.E.2d 203, 208 (2001). In such a case, we review the trial court's decision *de novo* and may affirm on any ground present in the record. *Subway Restaurants of Bloomington-Normal, Inc.*, 322 Ill. App. 3d at 381, 751 N.E.2d at 208;

*McDonald's Corp. v. American Motorists Insurance Co.*, 321 Ill. App. 3d 972, 978, 748 N.E.2d 771, 777 (2001).

■ Plaintiffs first contend that the physical education curriculum is protected from waiver by section 34—8.14 of the School Code, which provides that statutes, regulations, rules, and policy provisions concerning several areas, including health and safety, are not waivable. 105 ILCS 5/34—8.14(3) (West 1996). Plaintiffs argue that the physical education curriculum is based upon health and safety concerns, comparing the section 27—6 mandate of daily physical education to other health-related sections. Defendants respond that section 2—3.25g contains its own exclusions from waiver and argue that the nonwaivable provisions in section 34—8.14 are not related to section 2—3.25g.

■ The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40, 759 N.E.2d 533, 545 (2001). The best evidence of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Lulay v. Lulay*, 193 Ill. 2d 455, 466, 739 N.E.2d 521, 527 (2000). Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions in the statute. *Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n*, 196 Ill. 2d 70, 87-88, 750 N.E.2d 202, 212 (2001). The court must analyze the statute as a whole, considering each section in connection with every other section. *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 451-52, 687 N.E.2d 1014, 1016 (1997). Where the statutory language is clear and unambiguous, resort to other tools of statutory interpretation is unnecessary. *Burger*, 198 Ill. 2d at 40, 759 N.E.2d at 545.

■ In a case of first impression, we will construe sections 34—8.14 and 2—3.25g together and in light of their surrounding statutes. Section 34—8.14 applies only to cities with a population over 500,000 while section 2—3.25g applies statewide and concerns the powers of the State Board of Education. Additionally, section 34—8.14 is located within the Chicago Learning Zone Implementation Law (105 ILCS 5/34—8.6 through 34—8.19 (West 1996)). The General Assembly created this law "to accelerate the process of Chicago school reform" by adopting "the overriding philosophy that attendance centers [schools] should be empowered to develop models most appropriate to their situations." 105 ILCS 5/34—8.7 (West 1996). Learning zone schools are entitled to operate without state laws and regulations or board rules and policies. 105 ILCS 5/34—8.7 (West 1996). However, section 34—8.14 prohibits learning zone schools from waiving rules and regulations concerning certain issues, including health and safety,

student and staff civil rights, performance and financial audits, the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 1996)), and collective bargaining agreements. 105 ILCS 5/34—8.14 (West 1996). Thus, the clear language of section 34—8.14 dictates that it pertains only to learning zone schools and is separate and distinct from the waiver provision in section 2—3.25g. We find that section 34—8.14 does not apply to section 2—3.25g and does not insulate physical education from waiver. Further, section 2—3.25g specifically excludes only special education, teacher certification, and teacher tenure and seniority from waiver, implying that these are the only provisions which cannot be waived by this section. 105 ILCS 5/2—3.25g (West 1996). Accordingly, we reject plaintiffs' argument.

Next, plaintiffs make several arguments that the waiver procedure in section 2—3.25g is unconstitutional. Specifically, plaintiffs contend that, because section 2—3.25g waivers take effect upon the inaction of the legislature, they violate the constitutional formalities governing the formal passage of legislation, including the passage of bills (Ill. Const. 1970, art. IV, § 8), separation of powers (Ill. Const. 1970, art. II, § 1), presentment clause (Ill. Const. 1970, art. IV, §§ 9(a), (e)), bicameralism (Ill. Const. 1970, art. IV, § 8(c)), and the origination clause (Ill. Const. 1970, art. IV, §§ 8(a), (b)). All of these constitutional arguments are based on plaintiffs' contention that waivers under section 2—3.25g repeal or modify existing statutory enactments, here, section 27—6 of the School Code mandating daily physical education, and, thus, must follow constitutional formalities including passage by a majority of both houses and presentment to the Governor. Defendants respond that section 2—3.25g waivers do not repeal or modify existing legislation, but merely allow a school district to temporarily waive School Code mandates when "necessary to stimulate innovation or improve student performance." 105 ILCS 5/2—3.25g (West 1996). We agree with defendants.

■ Statutes are presumed to be constitutional, and the party challenging the validity of the statute has the burden of clearly rebutting this presumption. *Miller v. Rosenberg*, 196 Ill. 2d 50, 57-58, 749 N.E.2d 946, 951 (2001). Courts must construe a statute as to affirm its constitutionality if the statute is reasonably capable of such a construction. *Miller*, 196 Ill. 2d at 58, 749 N.E.2d at 951. Accordingly, "if [a] statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity." *People v. Shephard*, 152 Ill. 2d 489, 499, 605 N.E.2d 518, 523 (1992).

■ Plaintiffs confuse two separate and distinct issues: the enactment of the waiver procedure under Public Act 89—3 and the process in section 2—3.25g through which the waivers are granted. First, we

address the constitutionality of Public Act 89—3. Public Act 89—3 modified the existing statute by establishing the procedure at issue to waive School Code mandates and, thus, it was necessary to follow constitutional legislative formalities. It became law through the vote of a majority of both houses of the General Assembly and was presented to the Governor for his possible veto. Public Act 89—3, therefore, satisfied all procedural requirements for the passage of a bill. See, *e.g., Quinn v. Donnewald*, 107 Ill. 2d 179, 483 N.E.2d 216 (1985).

■ Secondly, we consider plaintiffs' arguments that the process created in section 2—3.25g through which waivers are granted is unconstitutional. Plaintiffs' contentions rest entirely on the mistaken assertion that section 2—3.25g waivers repeal or modify existing statutory enactments. In this case, for example, the statute mandating daily physical education remained in effect after the Chicago Board of Education obtained its waiver. The waiver did not repeal or amend that statute. It simply excused the Chicago Board of Education from complying with that portion of the School Code for a certain period of time. Therefore, each individual waiver need not be passed as if it were separate legislation and need not comply with the constitutional procedural requirements. See, *e.g., Quinn*, 107 Ill. 2d at 190-91, 483 N.E.2d at 222. Similarly, plaintiffs' contention that section 2—3.25g impermissibly grants school districts home rule powers also fails because it is again based on the false premise that, under section 2—3.25g, school districts hold the power to repeal or modify existing statutory enactments. Accordingly, all of plaintiffs' constitutional arguments based on this erroneous proposition fail.

Plaintiffs next argue that section 2—3.25g and the waivers granted to school districts constitute special legislation as prohibited by article IV, section 13, of the Illinois Constitution. Ill. Const. 1970, art. IV, § 13. They contend that section 2—3.25g creates arbitrary legislative classifications and changes the affected statute from a law of general application to a local matter controlled by the school district. Plaintiffs also argue that the Chicago Board of Education's waiver in this case permits the suspension of a general law, the mandate of daily physical education, on an individual and local basis. Defendants respond that section 2—3.25g contains no classifications, applies equally to all Illinois school districts, and that waivers under section 2—3.25g are not legislation and, thus, not bound by the special legislation prohibition.

■ Article IV, section 13, of the Illinois Constitution provides in relevant part that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable." Ill. Const. 1970, art. IV, § 13. This clause prohibits the General Assembly from

conferring a special benefit or privilege on a person or group to the exclusion of others similarly situated. *Miller*, 196 Ill. 2d at 60, 749 N.E.2d at 953. Because the purpose of this prohibition is to prevent arbitrary legislative classifications which discriminate in favor of a select group without a sound, reasonable basis, "a party raising a special legislation claim must, at the very least, prove the existence of an arbitrary legislative classification." *Chavda v. Wolak*, 188 Ill. 2d 394, 400, 721 N.E.2d 1137, 1141 (1999).

First, we note that, because waivers under section 2—3.25g are not legislation and do not need to comply with constitutional legislative formalities, they also need not comply with the prohibition against special or local legislation. Moreover, after analyzing section 2—3.25g, we cannot discern any legislative classification that discriminates in favor of a select group, "let alone one that does so arbitrarily or without a sound, reasonable basis." *Chavda*, 188 Ill. 2d at 400-01, 721 N.E.2d at 1142. Section 2—3.25g allows all school districts, not only Chicago, to petition the State Board of Education for a waiver from many of the School Code mandates and confers no special benefits or privileges on a person or group to the exclusion of others similarly situated. The same procedural requirements apply equally to any district requesting a waiver. Further, as discussed above, section 2—3.25g does not repeal or modify existing statutes and, thus, cannot change the affected statute from a law of general application to a local law. Plaintiffs have failed to prove the existence of any legislative classification and, thus, we find that section 2—3.25g does not violate the special legislation clause. Therefore, we reject plaintiffs' argument.

Plaintiffs next argue that section 2—3.25g is a variation of an impermissible legislative veto, a legislative decision to override a decision of the executive branch. *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 943-59, 77 L. Ed. 2d 317, 339-49, 103 S. Ct. 2764, 2781-88 (1983). Defendants respond that this court has no jurisdiction to consider this issue and that the General Assembly's right to grant or disapprove a waiver under section 2—3.25g does not constitute a legislative veto.

We agree with defendants that we have no jurisdiction to address this argument. Here, the State Board of Education reviewed the Chicago Board of Education's waiver application and submitted it, along with other waiver requests, to the General Assembly. After the General Assembly failed to disapprove the request, the waiver was granted. Because the waiver request was not disapproved by the General Assembly, the issue of whether that action would constitute a legislative veto is not before us. *Quinn*, 107 Ill. 2d at 192, 483 N.E.2d at 222.

Lastly, plaintiffs argue that section 2—3.25g is an unconstitutional delegation of legislative authority because it delegates broad powers to school districts and school boards. Plaintiffs contend that because school districts are not home rule units, they cannot exercise this inherent law-making power to amend, repeal and modify existing statutory enactments. Defendants respond that section 2—3.25g delegates no legislative authority to school districts because school districts only submit waiver requests to the General Assembly, which retains the authority to approve or disapprove a waiver application.

■ "It is well settled that notwithstanding the rule that the General Assembly cannot delegate its general legislative power to others, it may authorize others to do things which it might properly do but cannot do as understandingly or as advantageously itself, if the authority thus granted is delimited by intelligible standards." *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 130, 317 N.E.2d 534, 541 (1974). When final approval of an administrative act remains with the legislature, there is no delegation problem. *Waterfront Estates Development, Inc. v. City of Palos Hills*, 232 Ill. App. 3d 367, 372, 597 N.E.2d 641, 646 (1992). "Accordingly, when an administrative body acts in a merely advisory capacity, constitutional standards need not be met." *Waterfront Estates Development, Inc.*, 232 Ill. App. 3d at 372, 597 N.E.2d at 646.

Our supreme court rejected this constitutional attack when addressing a similar statute in *Quinn v. Donnewald*, 107 Ill. 2d 179, 483 N.E.2d 216 (1985). In *Quinn*, the plaintiffs challenged the Compensation Review Act (Ill. Rev. Stat. 1985, ch. 63, par. 901 *et seq.* (now 25 ILCS 120/1 *et seq.* (West 2000))), which created the Compensation Review Board to recommend to the General Assembly the salaries of judges, General Assembly members and other state officers. *Quinn*, 107 Ill. 2d at 183, 483 N.E.2d at 218. If each house of the General Assembly failed to disapprove the Compensation Review Board's report of recommendations within a specified time period, the salary recommendations became effective. *Quinn*, 107 Ill. 2d at 184, 483 N.E.2d at 218-19. The plaintiffs argued that the Act impermissibly delegated to the Compensation Review Board the power to determine the salaries of these state officials. The court dismissed plaintiffs' argument, finding that the legislature's general legislative powers were not delegated to the Compensation Review Board because the Board simply conducted studies, held public hearings, and recommended compensation levels to the General Assembly. *Quinn*, 107 Ill. 2d at 188, 483 N.E.2d at 220. Further, the Act provided several restrictions on the Compensation Review Board's authority to make recommendations. The court also noted that the General Assembly could reject any report

of the Compensation Review Board. *Quinn*, 107 Ill. 2d at 189, 483 N.E.2d at 221.

 Plaintiffs attempt to distinguish *Quinn*, arguing that the central holding of the case is that the Compensation Review Board's recommendations are not self-executing and only go into effect once the General Assembly passes an appropriations bill to fund the pay increases. Waivers under section 2—3.25g, however, take effect automatically without any action by the General Assembly. We find plaintiffs' attempts unpersuasive as *Quinn*'s discussion of salary changes and appropriation bills is not critical to the court's resolution of the constitutionality of the Compensation Review Act. After holding that the Act does not delegate any general legislative powers to the Compensation Review Board, the court addressed the defendants' contentions concerning appropriation bills, stating that this issue was "not relevant, of course, to the question of the Act's validity." *Quinn*, 107 Ill. 2d at 189, 483 N.E.2d at 221. The court's discussion of the appropriation bills does not affect *Quinn*'s holding that the Compensation Review Act is constitutional. Thus, this portion of the court's opinion is merely *dicta* and does not distinguish *Quinn* from the present case.

 Here, as in *Quinn*, the legislature has not delegated its general legislative powers to school districts or school boards under section 2—3.25g. First, as discussed above, school districts do not hold the power to repeal or amend existing law. School districts merely petition their local school boards for waivers from School Code mandates when "necessary to stimulate innovation or improve student performance." 105 ILCS 5/2—3.25g (West 1996). If the local school board approves the request after holding a public hearing, it forwards the application to the State Board of Education. The State Board only reviews these requests for completeness and compiles them into reports for submission to the General Assembly. The General Assembly then has 30 calendar days in which to approve or disapprove the report in whole or in part by a vote of the majority of each house. Therefore, the school districts and school boards act in a purely advisory role while the General Assembly retains the final authority to approve or disapprove the waiver requests. While the Compensation Review Board in *Quinn* determined salaries and made recommendations to the General Assembly, the school boards here merely compile requests and submit reports outlining the requests to the General Assembly. Thus, section 2—3.25g does not delegate general legislative powers to the school districts and school boards.

Further, any authority given to the school districts and school boards is sufficiently "delimited by intelligible standards." *Hoogasian*,

58 Ill. 2d at 130, 317 N.E.2d at 541. School districts may only petition for a waiver by showing that the waivers are necessary to "stimulate innovation and improve student performance." 105 ILCS 5/2—3.25g (West 1996). The statute provides that waivers may not be requested from rules, regulations and laws regarding special education, teacher certification or teacher tenure and seniority. Moreover, the written applications must be based upon a specific plan for improved student performance and school improvement. Accordingly, section 2—3.25g is not an unconstitutional delegation of legislative powers.

For the reasons stated above, we find that section 2—3.25g of the School Code is not unconstitutional and, thus, we affirm the judgment of the circuit court of Cook County which denied plaintiffs' motion for summary judgment and granted defendants' summary judgment motion.

Affirmed.

HOFFMAN, P.J., and HARTMAN, J., concur.