(No. 45171.

OAK PARK FEDERAL SAVINGS AND LOAN ASSO-CIATION *et al.*, Appellants, v. THE VILLAGE OF OAK PARK, Appellee.

*Opinion filed January 26, 1973.—Rehearing denied May 15, 1973.*

WARD, J., UNDERWOOD, C.J., and GOLDENHERSH, J., dissenting.

WILLIAM E. MASON, of Oak Park, for appellants.

KLEIN, THORPE, KASSON & JENKINS, of Chicago (ARTHUR C. THORPE, of counsel), for appellee.

RICHARD L. CURRY, Corporation Counsel, of Chicago (WILLIAM R. QUINLAN and RICHARD F. FRIEDMAN, Assistant Corporation Counsel), of counsel), for the City of Chicago, *amicus curiae.*

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, Oak Park Federal Savings and Loan Association and Oak Park Trust and Savings Bank, instituted a declaratory judgment action in the circuit court of Cook County against the defendant, the Village of Oak Park. The complaint prayed that the court declare invalid certain ordinances adopted by the defendant pursuant to home-rule powers granted by section 6 of article VII of the constitution of 1970. The defendant answered and filed a motion for judgment on the pleadings which the court allowed. The plaintiffs appealed to the appellate court and we granted defendant's motion to transfer the appeal to this court pursuant to our Rule 302(b). (50 Ill.2d R. 302(b).) Subsection (*l*) of section 6 of article VII of the constitution of 1970 provides:

> "(*l*) The General Assembly may not deny or limit the power of home rule units (1) to make local improvements by special assessment and to exercise this power jointly with other counties and municipalities, and other classes of units of local government having that power on the effective date of this Constitution unless that power is subsequently denied by law to any such other units of local government or (2) to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services."

Acting pursuant to the second provision of subsection (*l*) the defendant enacted a series of five ordinances. The first of these ordinances was adopted February 7, 1972. It defined the procedures for establishing areas for the providing of special services and provided that the president and board of trustees of the Village of Oak Park shall be the governing body of the special service area. It authorized the levying of taxes by the village board on the property in the special service area and the issuance of bonds to be retired by taxes levied against the property included in the area. The second ordinance, adopted April 3, 1972, following the procedure set forth in the first ordinance, initiated the proceedings for the creation of Special Service Area No. 1; provided for a hearing and directed the giving of notice of the hearing. The third ordinance found that the procedures prescribed by the first ordinance had been complied with and declared Village of Oak Park Special Service Area No. 1 established. The ordinance declared that the services to be provided by the service area included the creation of a shopping mall within the special service area, including excavation and paving, infrared heating, if practical, graphics, landscaping, furniture, lighting and acquisition of property for parking purposes. The fourth ordinance found that it was to the best interest of the Oak Park Special Service Area No. 1 that off-street parking be furnished for use in connection with the shopping mall and that in order to furnish free off-street parking and other special municipal services it is necessary that a real-estate tax be levied against the property of the special service area for the purpose of retiring outstanding revenue bonds previously issued by the Village for the purpose of purchasing parking lots. The fifth ordinance provided for the issuance of bonds of the special service area in the amount of $1,550,000 to be retired by the levy of taxes on the property within the district. This money is to be used for the purpose of

establishing the shopping mall. The third, fourth and fifth ordinances were adopted on May 1, 1972.

The plaintiffs contend that the defendant cannot, without enabling legislation adopted by the General Assembly, create a special service area or impose taxes or issue bonds to provide special services under section 6(*l*) of article VII. We agree with this contention. The somewhat unusual wording of section 6(*l*)(2) which requires clarification is as follows:

> "(*l*)  *The General Assembly may not deny or limit* the power of home rule units *** (2) to levy or impose additional taxes upon areas within their boundaries *in the manner provided by law* for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services." (Emphasis added.)

It is the italicized language quoted above which, on a casual reading, may appear to be in conflict and therefore requires our consideration. In the matter of constitutional construction, it is incumbent upon the court to give meaning to every section and clause of the instrument. If different parts of the constitution appear to be in conflict, the court must harmonize them, if practicable, and must favor a construction which will render every word operative rather than one which will make some words idle and nugatory. (1 Cooley's Constitutional Limitations 128 (8th ed. 1927); 2 J. Sutherland, Statutes and Statutory Construction, sec. 4705 (3d ed. 1943).) One clause will not be allowed to defeat another if by any reasonable construction the two can be made to stand together. 1 Cooley's Constitutional Limitations 129 (8th ed. 1927).

Although the first part of section 6(*l*) appears to command that the General Assembly not interfere with the home-rule power specified in this subsection, paragraph (2) of subsection (*l*) seems to require that the power be exercised only pursuant to a law adopted by the General Assembly. If we hold that the provisions of

section 6(*l*)(2) are self-executing and that a home-rule unit may enact ordinances creating special service areas and imposing taxes to provide special services without enabling legislation, then no effect is given to the words "in the manner provided by law" and such a construction will render these words meaningless.

However, by adopting a construction which requires the machinery and procedures for implementing this function to be established by law, while prohibiting the General Assembly from denying or limiting the exercise of the power, the two apparently conflicting provisions are harmonized. In keeping with the accepted principles of constitutional construction, this is the interpretation which must be given to this language.

The defendant contends that since the ordinance provides that the assessment of properties and the manner of levying taxes in the special service area shall be in the manner provided by the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 482 *et seq.*), the requirements of section 6(*l*)(2) have been satisfied. We are convinced that the language "in the manner provided by law" in this subsection of the constitution does not refer to the Revenue Act of 1939 but envisages specific enabling legislation directed to this section of the constitution. This method of taxation during the course of the constitutional debates was referred to as "differential" taxation. It was a new concept of taxation in Illinois. It was a departure from the requirement of uniformity of the 1870 constitution (Const. of 1870, art. IX, sec. 10), and its purpose was to authorize local-government units to tax different areas within their boundaries at different rates as the services furnished to those areas required. Section 10 of article IX of the 1870 constitution did not permit such differential taxation but required that the property within the municipal corporation be taxed uniformly. The Revenue Act of 1939, pursuant to this constitutional mandate, required that the tax rate for each taxing district be

ascertained and extended against all the property of the district. Ill. Rev. Stat. 1971, ch. 120, par. 643, 645.

The ordinances in question in this case are the ordinances of the Village of Oak Park, and under the Revenue Act of 1939, without further enabling legislation, the taxes levied by these ordinances are required to be extended against all of the property of the taxing district, which in this instance is the Village of Oak Park. The provisions of the Revenue Act of 1939 do not attempt to establish the statutory framework within which section 6($l$)(2) can be implemented.

In the absence of enabling legislation, we hold that the five ordinances of the Village of Oak Park which attempt to exercise the home-rule powers of section 6($l$)(2) of article VII of the constitution of 1970 are void.

*Judgment reversed.*

MR. JUSTICE WARD, with whom MR. CHIEF JUSTICE UNDERWOOD and MR. JUSTICE GOLDENHERSH join, dissenting:

Mr. Chief Justice Underwood, Mr. Justice Goldenhersh and I consider that the opinion of the majority in holding that home-rule units require enabling legislation in order to create special service areas and to tax for special services seriously contradicts an authority conferred on home-rule units by the constitution.

The majority not unreasonably begins by observing that it is incumbent upon the court to give meaning to every section and clause of the pertinent constitutional provisions, but, as we view it, it then proceeds to contradict and deny effect to sections 6(a), 6(g), 6(h) and 6($l$). In doing so, it examines 6($l$) in isolation and makes no reference to sections 6(a), 6(g) or 6(h).

When one examines section 6 (Powers of Home Rule Units) in its entirety, it can be seen that 6(a) is the source of a home-rule unit's powers. Making a grant of powers, it, as is pertinent here, declares:

"*** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."

It is clear that the constitutional drafters intended through section 6(a) to give home-rule units a comprehensive authority to provide for the government and affairs of a unit, subject, insofar as section 6 is concerned, to such restrictions as the drafters might insert thereafter in this section. The Report of the Committee on Local Government to the Constitutional Convention (p. 45) shows the breadth of the grant of powers to home-rule units. It said that the powers given under 6(a) "are designed to ensure that the specified counties and cities receive directly under the constitution the broadest possible range of powers to deal with problems facing them and with demands that are made upon them by their residents and by the greater society." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1619.) Reflecting the apprehension of the convention that judicial interpretation of powers might be unduly restrictive, the drafters, in an effort to make some of the most important home-rule powers invulnerable to judicial slighting, specified the powers of regulation, licensing, taxing and incurring debt. The Report observes at p. 48:

"Standing alone, the general grant of local powers would be subject to interpretation and possible limitation in important respects by the courts. This danger is especially important in Illinois with its tradition of strict construction of local powers. To avoid this danger, the Committee believes it desirable to specify those basic areas of local power which are most important and which, without question, are included in the more general language of the proposed section." 7 Proceedings 1622.

Following 6(a) is a series of paragraphs (c through k) which actually limit or authorize the General Assembly to limit the home-rule authority conferred in section 6(a).

These are the limitations on home-rule units under section 6. It is to be observed that section 6(*l*) is not a limitation on home-rule units but is an explicit limitation on the authority of the General Assembly to restrict the powers of home-rule units. The authority of the defendant to enact the challenged ordinances is not to be found in 6(*l*), but rather must be found in 6(a). The prohibition in 6(*l*) against the legislature's acting to deny or limit the power of home-rule units to make local improvements and to levy for the provision of special services is itself a recognition of the existence of the power. The prohibition in this paragraph against legislative interference with the power shows the drafters' consciousness that elsewhere, *viz.,* in section 6(a), the power was conferred on home-rule units.

That the constitutional drafters intended to preserve the home-rule powers referred to in 6(*l*) free from legislative restriction is evidenced also by the language of 6(g) and 6(h).

Section 6(g) states: "The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State *other than a power or function specified in subsection (l) of this section.*" (Our emphasis.) The drafters in providing that the General Assembly by a three-fifths vote might limit or deny the power to tax and other powers or functions of the home-rule unit not exercised by the State specifically excepted the powers and functions specified in 6(*l*).

Section 6(h), also, in authorizing limitations on home-rule powers specifically excepted the home-rule powers and functions referred to in 6(*l*). Section 6(h) reads: "The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit *other than a taxing power or a power or function specified in subsection (l) of this Section.*" (Our emphasis.)

We would note, too, another seemingly unnoticed and paradoxical consequence of the majority's holding. Section 6(*l*) expressly provides that the General Assembly may not deny or limit the power of home-rule units to make local improvements and to levy taxes for the provision of special services. However, under the holding of the majority, the legislature, by not enacting the legislation which the majority considers necessary, has done what the constitution specifically prohibits, *viz.*, denying the power. By construing the language "in the manner provided by law" to be a requirement that there be enabling legislation, the majority permits the legislature to do by inaction what the constitution expressly prohibits it from doing. The majority does not comment on what appears to be an easy frustration of the constitutional intendment.

The majority makes no reference to the proceedings of the constitutional convention in forming its conclusion that the drafters of the constitution intended to make a home-rule unit's power to create special service areas and to tax for special services conditional under 6(*l*) upon the enactment of enabling legislation. It is not always easy to read, interpret and understand the flow and sometimes the mazes of the convention's proceedings, but we consider a careful study of the proceedings makes it apparent that the power to tax for special services was not made conditional. An examination of pages 3144, 3146, 4248, 4249 and 4450 of volumes IV and V of the Constitutional Proceedings (Verbatim Transcripts) is helpful in understanding the background to the preparation of 6(*l*). The majority proposal of the Committee on Local Government relative to "differential" and special service taxation (*sec. 4.2*) was referred to the Style, Drafting, and Submission Committee for revision. It was however "lost" for a time because of some confusion, but it was later submitted to the convention as section 6(e)(3) of the Style, Drafting, and Submission Proposal No. 15. As then presented, a home-rule unit would clearly have to have enabling legislation to

impose special service taxation. (The text of section 6(e)(3) appears at pages 2474, 2475 of volume VII, Constitutional Proceedings, Committee Proposals.) When it became obvious that 6(e)(3) did not fulfill the drafters' intent that enabling legislation was not to be required it was rejected. (Pages 4248, 4249, Verbatim Transcripts.) Section 6(*l*) was then drafted. The colloquy at page 4450 (Verbatim Transcripts) reflects that the intendment was not to have the powers to make special assessments and to levy special service taxes dependent upon enabling legislation. The power to specially assess and to levy special service taxes was referred to as a constitutional right.

Mr. Chief Justice Underwood, Mr. Justice Goldenhersh and I consider that the language "in the manner provided by law" in (6)(*l*) is satisfied by the ordinance's provision that established procedures for the tax levy and assessment of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 482 *et seq.*) be utilized through application of section 9 of the constitution's Transition Schedule. (See Delegate Lennon's and Chairman Parkhurst's comments at 4 Proceedings 3143, 3144, and 5 Proceedings 4249.)

Apart from this, we judge that a home-rule unit could establish its own procedures, subject, of course, to meeting due-process and other constitutional requirements. A power to tax carries with it the authority to provide for necessary procedures.