RICHARD PEILE *et al.*, Plaintiffs-Appellees, v. SKELGAS, INC., *et al.*, Defendants-Appellants.

Fifth District    No. 5—92—0040

Opinion filed March 25, 1993.

LEWIS, J., specially concurring.

Ian P. Cooper, of Peper, Martin, Jensen, Maichel & Hetlage, of St. Louis, Missouri, for appellants Phillips Petroleum Company, Phillips 66 Company, and Phillips Pipe Line Company.

Robert W. Wilson and Adrian P. Sulser, both of Evans & Dixon, of Edwardsville, for appellants Skelgas, Inc., and Skelgas Group, Inc.

James Michael Cox, of Coburn, Croft & Putzell, of Belleville, and Shell Oil Company, of Houston, Texas (Randall J. Heldt, of counsel), for appellant Shell Oil Company.

Sandor Korein, Robert S. Bogard, and Michael B. Marker, all of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellees.

JUSTICE MAAG delivered the opinion of the court:

This case is before us on a petition for leave to appeal pursuant to Supreme Court Rule 306(a)(1)(ii) (134 Ill. 2d R. 306(a)(1)(ii)) challenging the denial of a motion to transfer pursuant to the doctrine of intrastate *forum non conveniens*. The defendants, Skelgas, Inc., Skelgas Group, Inc., Phillips Petroleum Company, Phillips 66 Company, Phillips Pipe Line Company, and Shell Oil Company, contend that the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, abused its discretion in denying their motion to transfer this cause from St. Clair County to Pike County. We granted the defendants' petition for leave to appeal and hereby affirm the order of the circuit court.

### I. PROCEDURAL HISTORY

We believe that in order to have an understanding of the posture in which this case is presented to us, we must first trace the procedural history.

Plaintiffs originally filed an action arising out of the same occurrence in the circuit court of Madison County on April 19, 1988. At that time, the parties to the action were Skelgas Incorporated, York International Corporation, and Honeywell Incorporated. The complaint alleged that those defendants were liable in both negligence and strict liability for injuries suffered by the plaintiff as a result of an October 20, 1987, propane gas explosion at his residence in Pike County. A motion to transfer under the doctrine of intrastate *forum non conveniens* was filed by all defendants. The circuit court of Madison County, after considering the motions and plaintiffs' response, granted the transfer motion on July 28, 1988, and ordered the cause transferred to Pike County. The plaintiffs did not appeal the Madison County circuit court's order.

After transfer, the plaintiffs added as additional defendants Skelgas Group, Inc., Shell Oil Company, Phillips Petroleum Company, Phillips 66 Company, and Phillips Pipe Line Company. Discovery pro-

ceeded in the Pike County action and the parties prepared for trial. Trial was set on July 9, 1990. On April 27, 1990, the Pike County action was voluntarily dismissed by the plaintiffs.

On December 14, 1990, the plaintiffs refiled this case in St. Clair County. In the refiled St. Clair County action, the parties are the same as those involved in the original action at the time of the voluntary dismissal, except neither York International Corporation nor Honeywell Incorporated is named as a defendant in the refiled action. It is the refiled action pending in St. Clair County which is the subject of this appeal.

Following service, the defendants again filed timely intrastate *forum non conveniens* motions seeking the transfer of this action to Pike County.

## II. FACTS

The facts in this case are not in serious dispute. On October 20, 1987, the plaintiff, Richard Peile, was attempting to light a gas furnace that was served by propane gas. During the process of lighting the furnace, an explosion and fire occurred which resulted in serious injuries to the plaintiff. In his deposition, the plaintiff stated that there was no smell of gas fumes prior to the explosion. The explosion and fire occurred at the plaintiffs' residence in Pike County.

In St. Clair County there is a pipeline-storage facility where propane gas is stored prior to delivery to various wholesalers and other customers. At this storage facility, an odorant is added to the propane gas to enable the customers using the gas to be able to detect its presence in the event of a gas leak. Most of the gas sold to the plaintiff had been stored in the St. Clair County storage and odorization facility. A small portion of the gas sold to the plaintiff may have originated with the Shell Oil facility in Madison County.

All parties agree that there are a number of witnesses in Pike County having knowledge of the facts leading up to and following the explosion and fire. These include both fact witnesses and medical witnesses. Some of these witnesses are employed by the defendant, Skelgas. Additionally, there are medical witnesses located in Springfield that have knowledge of the plaintiff's medical condition. While not specifically named, it is reasonable to assume that there are employees working at the storage and odorization facility in St. Clair County who would have knowledge regarding the operations conducted at that facility.

### III. THE CONTENTIONS OF THE PARTIES

All current defendants are alleged to be sellers or suppliers of the propane gas in use at the time of the explosion and fire.

The defendants claim that extensive discovery was conducted in the original action and that all the witnesses deposed and five additional persons who are likely to be witnesses were shown to be residents of Pike County. Further, none of the original discovery, according to the defendants, revealed any potential witnesses who were residents of St. Clair County. The defendants state that numerous medical personnel who reside in Pike County treated the plaintiff and that physical therapy was given in Pike County. The plaintiff received additional medical services from physicians in Springfield, Illinois, and the plaintiffs have designated two Springfield, Illinois, physicians as experts. According to the defendants, there are no witnesses either factual or medical who reside in St. Clair County.

Finally, the defendants claim that since the Madison County circuit court granted the original *forum non conveniens* motion, and given the fact that no appeal was taken from that order, the plaintiffs should not be allowed to relitigate the issue of whether Pike County is the most appropriate forum. For these reasons, the defendants seek the transfer of this case to Pike County under the doctrine of *forum non conveniens*, claiming that Pike County is the most appropriate forum.

In opposition, the plaintiffs claim that Pike County was merely the fortuitous location of this occurrence. Plaintiffs state that the original action filed in Madison County focused primarily on design defects in the furnace. Of the current defendants, only Skelgas was a party at the time of the transfer from Madison County to Pike County. In contrast, the present action focuses primarily on an alleged failure to properly odorize and test gas stored in a pipeline located in St. Clair County. Thus, the plaintiffs claim that the tortious act which precipitated the fire occurred in St. Clair County. For this reason, the plaintiffs claim that St. Clair County is the most appropriate forum and ask that the denial of the defendants' *forum non conveniens* motion be affirmed.

### IV

In addressing the issues raised in this case, we will discuss the *forum non conveniens* doctrine first from a traditional standpoint. Next, although not raised by any of the parties, we will consider the effect of section 2—108 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch.

110, par. 2—108) upon the *forum non conveniens* doctrine. We do so in "the interest of justice and the previously unclear nature of the law." (*Meyers v. Kissner* (1992), 149 Ill. 2d 1, 8, 594 N.E.2d 336, 339.) In doing so, it will be necessary to discuss the concept of the venue at common law, the effect of section 2—101 through 2—108 of the Civil Practice Law (the venue statutes) upon common law venue principles, the history of section 2—108, and finally its effect upon the *forum non conveniens* doctrine. Ill. Rev. Stat. 1991, ch. 110, pars. 2—101 through 2—108.

V. TRADITIONAL *FORUM NON CONVENIENS* ANALYSIS

A. THE DEVELOPMENT OF *FORUM NON CONVENIENS* IN ILLINOIS

The doctrine of *forum non conveniens* was first recognized by our supreme court in the case of *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593. In *Whitney*, relying upon the then recently announced United States Supreme Court decision of *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839, the supreme court held that if

"relief is sought in the local courts by a nonresident against a nonresident for a transaction which occurred outside the territorial boundaries of the State, for the purpose of frustrating the defendant, or if the bringing of the action unduly burdens the defendant or cause[s] him great and unnecessary inconvenience, or unnecessarily burdens the court, the trial court may, in its discretion, decline the jurisdiction of the case, even though it may have proper jurisdiction over all parties and the subject matter involved." *Whitney*, 400 Ill. at 189, 79 N.E.2d at 595.

The *Whitney* decision applied only to cases in which an alternative forum was available in another State. Under this circumstance, since an Illinois court could not transfer an action from Illinois to another State, the circuit court was required to decline jurisdiction of the action and dismiss the case. This motion seeking dismissal based upon the *forum non conveniens* doctrine has been referred to as an interstate *forum non conveniens* motion.

Later cases developed the doctrine of interstate *forum non conveniens* in Illinois. *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 152 N.E.2d 385, was a case arising under the Federal Employers Liability Act (45 U.S.C. §1 *et seq.* (1988)). In the *Cotton* case, the plaintiff, a resident of Kentucky, was injured at the defendant's switchyards in Covington, Kentucky. His suit was filed in the

city court of East St. Louis. The defendant filed a *forum non conveniens* motion seeking dismissal of the action. The *forum non conveniens* motion was denied by the trial court. On appeal the supreme court was again given an opportunity to discuss the applicability the doctrine in this State. The court applied a stringent test. It stated that the trial court must determine

> "whether the choice of forum was purely vexatious, or whether there is a relevant connection between the litigation and forum chosen." *Cotton*, 14 Ill. 2d at 168, 152 N.E.2d at 397.

In response to claims that the plaintiff was forum shopping when he brought his lawsuit in Illinois, the court responded by stating:

> "If it is 'shopping' for a plaintiff to bring a suit in a great metropolis where a large verdict is anticipated, why is it not also 'shopping' for a defendant to attempt to have the case dismissed on the ground that it should have been brought in a small community where the defendant anticipates a smaller verdict would result." (*Cotton*, 14 Ill. 2d at 174, 152 N.E.2d at 400.)

The court then held that the case had not been brought in the forum selected for the purpose of vexing or harassing the defendant, and the court accordingly affirmed the trial court's denial of the *forum non conveniens* motion.

The vexation-and-harassment test announced in *Cotton* was short lived. In *People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 180, 195 N.E.2d 634, 635, this test was formally abandoned. The court then announced that the appropriate factors to be considered in ruling on a *forum non conveniens* motion were those announced in *Whitney* and the other portions of the *Cotton* case that had not been overruled.

These factors were reiterated in *Adkins v. Chicago Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729:

> "Factors to be considered in disposing of a motion to dismiss *forum non conveniens* include the relative capacities of the two courts to provide a fair trial, the relative inconvenience to witnesses and parties, and the burden placed upon the taxpayers and residents of the jurisdiction to which the cause of action is transported." 54 Ill. 2d at 514, 301 N.E.2d at 730.

The private-interest/public-interest factor test announced in *Gulf Oil* was formally approved in *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 383 N.E.2d 977. The private-interest factors were identified as:

> (1) The relative ease of access to sources of proof.

(2) The availability of compulsory process for attendance of unwilling witnesses.

(3) The cost of obtaining attendance of willing witnesses.

(4) The possibility of a view of the premises if appropriate.

(5) All other practical problems that make the trial of a case easy, expeditious, and inexpensive.

The public-interest factors were identified as:

(1) The administrative difficulties which result for courts when litigation is piled up in congested centers.

(2) Jury duty is a burden that ought not to be imposed upon the people of the community which have no relation to the litigation.

(3) An interest in having localized controversies decided at home.

(4) A desire to have a court apply law with which it is familiar rather than the law of a foreign jurisdiction.

(See *Giliberto*, 74 Ill. 2d at 110-11, 383 N.E.2d at 985.) When applying this test, the trial court must balance the convenience of the parties and make an appropriate ruling based upon the facts and the factors set forth above. The court cautioned that a plaintiff enjoys a substantial right to select his forum, and that this choice of forum should not be disturbed unless the balance of convenience strongly favors the defendant. *Giliberto*, 74 Ill. 2d at 111, 383 N.E.2d at 985, citing *Gulf Oil*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839.

This deference is known as the unequal-balancing test. This is in keeping with the view expressed in Restatement (Second) of Conflict of Laws, section 84, Comment *c*, at 251-52, and Reporter's Note, at 255 (1971), which state that the plaintiff's right to select the forum is one of the two most important factors to be considered. See also *Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 119, 427 N.E.2d 111, 118.

The right to select the forum is not always viewed, however, with the same deference. In *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359, 456 N.E.2d 98, the supreme court stated:

"When the home forum is chosen, it is reasonable to assume that the choice is convenient. When the plaintiff is foreign to the forum chosen, however, this assumption is much less reasonable and the plaintiff's choice deserves less deference." 98 Ill. 2d at 367, 456 N.E.2d at 102.

The *Wieser* court stated that if the selected forum had a "connection with the litigation such as the residence of the plaintiff, or the principal place of business of the defendant, or the situs of the acci-

dent, or the decedent's employment, it would have had an interest in providing a forum in which to resolve the dispute." (98 Ill. 2d at 371-72, 456 N.E.2d at 104.) Therefore, these factors constitute a set of criteria to consider in determining whether the case is at "home" in the forum selected. If any of these criteria are satisfied, the plaintiff's choice deserves greater deference and the case should normally remain in the forum selected by the plaintiff. See, *e.g., Brummett v. Wepfer Marine, Inc.* (1986), 111 Ill. 2d 495, 490 N.E.2d 694.

This was the status of the doctrine of *forum non conveniens* in the State of Illinois until September of 1983. Our courts had only recognized the doctrine on an interstate basis, and no decision of our supreme court had ever recognized the authority of a trial court to transfer a case from one county to another based upon the *forum non conveniens* doctrine. This changed with the decision of *Torres v. Walsh* (1983), 98 Ill. 2d 338, 456 N.E.2d 601.

In *Torres*, our supreme court adopted the doctrine of intrastate *forum non conveniens*. *Torres* was a medical malpractice suit arising out of treatment rendered in Sangamon County. The plaintiffs filed suit in Cook County, and the defendants filed a motion to transfer the cause to Sangamon County based upon *forum non conveniens*. The motion to transfer was granted, and the plaintiffs then petitioned the supreme court directly for a writ of *mandamus* and prohibition or a supervisory order to compel the trial court to vacate its transfer order and retain venue in Cook County.

The court recognized that intrastate *forum non conveniens* had not previously been adopted in Illinois. It observed that 18 of our sister States had adopted intrastate *forum non conveniens* through legislative action. It was conceded that our courts were without statutory authorization to order an intrastate transfer under the *forum non conveniens* doctrine. *Torres*, 98 Ill. 2d at 347, 456 N.E.2d at 605.

In adopting intrastate *forum non conveniens*, the supreme court reasoned that since English common law had been adopted in Illinois, and since the English courts during the 1700's and 1800's had transferred cases from one venue to another based on principles similar to those found in the *forum non conveniens* doctrine, the doctrine was, therefore, part of the common law adopted by the State of Illinois. (*Torres*, 98 Ill. 2d at 347, 456 N.E.2d at 605.) The court found support for this position in the fact that the Oklahoma and Kansas Supreme Courts had reached similar conclusions. *Torres*, 98 Ill. 2d at 350, 456 N.E.2d at 607.

With the adoption of intrastate *forum non conveniens*, the supreme court instructed us that the factors to be taken into consider-

ation in making the decision whether to grant or deny an intrastate motion were "the availability of an alternative forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties." (*Torres*, 98 Ill. 2d at 351.) The court cautioned that unless these factors strongly favored the defendant, the plaintiff should be allowed to exercise his choice of forum in conformity with the venue statutes.

Since the decision in *Torres*, intrastate *forum non conveniens* motions have become common in the trial courts of this State. No less common are the interstate motions that are filed seeking dismissal. The decisions in the intrastate and interstate cases are cited interchangeably since the factors to be considered in both types of motions are similar. See *Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 506 N.E.2d 1291; *Washington v. Illinois Power Co.* (1991), 144 Ill. 2d 395, 581 N.E.2d 644.

### B. THE APPLICATION OF *FORUM NON CONVENIENS* TO THE FACTS OF THIS CASE

The trial court cited three reasons for denying defendants' motions to transfer the cause to Pike County, stating:

(1) There is a significant connection between St. Clair County and this action for the reason that certain alleged acts of negligence were committed in St. Clair County by the defendants.

(2) There may be a site in St. Clair County for the jury to view, while the site in Pike County is no longer present and available for view.

(3) The status of the docket of the circuit court of St. Clair County would not prevent trial in an expeditious manner, and trial could be set within four months of the time of the parties announcing ready.

The sole issue to be decided is whether the circuit court of St. Clair County abused its discretion in denying defendants' motions to transfer this cause to Pike County based upon intrastate *forum non conveniens*.

■ The supreme court has consistently held that a trial court is vested with broad discretion in ruling on a *forum non conveniens* motion, and its decision will not be reversed absent a showing that the court abused its discretion in weighing relevant considerations. (*Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 497 N.E.2d 745.) The test is whether the relevant factors,

viewed in their totality, strongly favor transfer to the forum suggested by defendant.

■ We consider first the relevant public-interest factors in the case before us. The defendants allege that the trial court abused its discretion in finding that there is a significant connection between St. Clair County and the action. Defendants also contend that the trial court abused its discretion in finding that the status of the trial court's docket would not prevent a trial from being conducted in St. Clair County in an expeditious manner. Defendants allege that the residents of St. Clair County have no interest in this case while the citizens of Pike County have a compelling interest in this litigation because the explosion and fire occurred in Pike County.

All defendants save one conduct business in St. Clair County. Merely conducting business, however, in St. Clair County does not affect the *forum non conveniens* issue because there must be some contact with St. Clair County in order for venue and jurisdiction to be proper. (See *Bland,* 116 Ill. 2d at 226.) Nevertheless, the extent and type of business conducted is an appropriate consideration for the circuit court on a *forum non conveniens* motion.

In *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 554 N.E.2d 209, actions were brought on behalf of the victims of a plane crash which occurred in Du Page County. The flight had originated in Cook County, which was "the last place the aircraft was on the ground, and the last place the plane was inspected, before the crash occurred." (*Griffith,* 136 Ill. 2d at 113-14, 554 N.E.2d at 215.) The supreme court ruled that Cook County's interest in the litigation was in ensuring the safety of flights that emanate from its airports, while Du Page County's interest was in protecting persons within its borders and in compensating victims of accidents that occur there.

This court also addressed a similar situation in *Kemner v. Monsanto Co.* (1991), 217 Ill. App. 3d 188, 576 N.E.2d 1146. The *Kemner* case arose out of a train derailment and subsequent chemical spill that occurred in Sturgeon, Missouri. The defendant had shipped from its plant in Sauget, Illinois, a railroad tank car which contained a small amount of dioxin which was spilled in Sturgeon when the train derailed.

We affirmed the trial court's denial of defendants' motions to dismiss premised on *forum non conveniens.* While the plaintiffs were all residents of the site of the occurrence in Missouri, the defendant had a plant in Sauget, Illinois, and many of the claims centered around the defendants' acts and omissions in its facility in Sauget. The location and importance of the defendant's plant, the plaintiffs' preference, the num-

ber of Illinois witnesses, and the convenience to out-of-State witnesses were enumerated as factors supporting the trial court's decision.

In the instant case, plaintiffs allege that defendants improperly odorized and tested the propane gas stored in defendant Phillips' storage and odorization facility located in St. Clair County. Plaintiffs further allege that the odorant should have been added to the propane at the pipeline facility. It is also the site where a Skelgas employee performed, or should have performed, a "sniff test" for the odorant. The storage and odorization facility is alleged to have been the last place the propane gas was inspected for odorant before the explosion and fire occurred in Pike County. Certainly the residents of St. Clair County have an interest in ensuring the safety of propane gas stored and odorized in their county. It is also apparent that many of the claims in this case center around the defendants' alleged acts and omissions occurring at the storage and odorization facility. We, therefore, find that the trial court did not abuse its discretion in finding that there is a significant connection between St. Clair County and the action. As St. Clair County has a significant connection with the litigation, it also has an interest in providing a forum to resolve the dispute. *Wieser*, 98 Ill. 2d at 371-72, 456 N.E.2d at 104; *cf. Brummett v. Wepfer Marine, Inc.* (1986), 111 Ill. 2d 495, 490 N.E.2d 694 (holding that the situs of the alleged tortious conduct is relevant in choosing the most appropriate forum).

With reference to the court-congestion factor, figures compiled by the Administrative Office of the Illinois Courts indicate that the average time for termination by jury verdict in major civil cases was 37.5 months in St. Clair County, as opposed to 36.5 months in Pike County. In *Griffith*, the supreme court ruled that the mere fact that the average time for termination by jury verdict was 21.4 months in Du Page County compared to 66.3 months in Cook County did not justify the transfer of the case from Cook County. Our supreme court has also recognized and acknowledged that a trial court is in a better position than a reviewing court to assess the burdens on its own docket. (*Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 568 N.E.2d 883.) Consequently, the circuit court did not abuse its discretion by examining the status of its own docket and concluding that court congestion did not necessitate transferring the case to Pike County.

Lastly, we address the issue of the burden of jury duty to the citizens of a county. The key consideration in this regard is the unfairness of imposing jury duty upon residents of a county "with no connection to the litigation." (*Griffith*, 136 Ill. 2d at 106, 554 N.E.2d at 215.) In *Griffith* the supreme court held that Cook County's interest in the resolution of the case did not impose any unfairness in imposing jury duty

on the citizens of Cook County. Likewise, in the instant case, St. Clair County's significant connection and interest in the resolution of this case, as previously discussed, does not unfairly impose jury duty on St. Clair County citizens.

Next, turning to the relevant private-interest factors, defendants raise a number of issues relating to the accessibility of witnesses in St. Clair County.

There is little doubt that there are a number of witnesses in Pike County having knowledge of the facts leading up to and following the explosion and fire. Defendants allege that at least 10 "key fact witnesses" reside in Pike County. Two of the listed "key fact witnesses" are the plaintiffs, two are Skelgas employees, and the other six are members of the Pittsfield fire department, the ambulance service, and employees of Watson Plumbing and Heating. A trial court is entitled to consider the likelihood that witnesses who may possess uncontested information will be called to testify at trial. (*Griffith*, 136 Ill. 2d at 110-11, 554 N.E.2d at 213.) It is questionable that all 10 of the "key fact witnesses" shall be called to testify at trial, particularly the members of the fire department and ambulance service who responded to the explosion and fire. Likewise, it is doubtful that many of the medical witnesses who are located in Pike County or areas closer to Pike County than St. Clair County would be likely to appear and testify at trial whether the case is tried in Pike County or St. Clair County.

Coupled with the fact that there are undoubtedly some employees working at the storage and odorization facility in St. Clair County who have knowledge of the operations at the facility, we find that the circuit court did not abuse its discretion by giving little weight to the location of the possible 10 "key fact witnesses" and medical witnesses.

Plaintiffs allege that St. Clair County is more convenient for out-of-State witnesses, citing the fact that Lambert International Airport is 25 miles from Belleville, and defendants allege that Pike County is the more convenient forum for out-of-State witnesses, noting that Quincy's airport is 30 miles from the Pike County courthouse. Without reaching the merits of this debate, we conclude that the circuit court did not abuse its discretion in its consideration of this issue. *Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101, 554 N.E.2d 209; *Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 568 N.E.2d 883.

Another private-interest factor to be taken into account is whether the jury would need to view a physical location. The trial court found that the storage and odorization facility in St. Clair County may be a site for the jury to view and noted that the plaintiffs' home in Pike County is no longer present and available for view. While plaintiffs al-

lege that the viewing of the storage and odorization facility may be an aid to the jury, defendants contend that the storage and odorization facility is of no importance and can add no benefit to the jury viewing it. It is within a court's discretion to permit a jury to view the premises which are part of the subject matter of the litigation. (*Springer v. City of Chicago* (1891), 135 Ill. 552, 26 N.E. 514.) We find no abuse of discretion in the trial court's finding that the storage and odorization facility is part of the subject matter of this litigation and may be appropriate for a view.

Finally, the defendants claim that the plaintiffs should not be allowed to relitigate the *forum non conveniens* issue since the Madison County circuit court ruled previously that the case should be transferred from Madison to Pike County. They express the further fear that if the plaintiffs are allowed to relitigate this issue, and if the case is again transferred to Pike County, another voluntary dismissal may occur with a subsequent refiling in a county other than Pike.

As to the relitigation claim, we simply hold that the propriety of the Madison County transfer order is not before us. Even if it were, the most that can be said of that transfer order is that under the facts before the court at that time, the Madison County court had discretion to grant or deny the motion. It chose to grant the motion. We, however, must review this case in light of the facts before the St. Clair County circuit court at the time it denied the motion.

The claim that the plaintiffs may voluntarily dismiss again if this case is transferred to Pike County is without merit. If another voluntary dismissal is taken, the dismissal would be with prejudice. *Flesner v. Youngs Development Co.* (1991), 145 Ill. 2d 252, 582 N.E.2d 720.

We have viewed and considered all the factors, both private and public, and find that the circuit court did not abuse its discretion in denying the motion to transfer.

## VI

We will now discuss the concept of venue at common law, the changes made by our venue statutes, and the history and construction of section 2—108 of the Civil Practice Law.

### A. VENUE AT COMMON LAW

"Venue is the place of trial of an action, the geographical location in which the action or proceeding should be brought to trial." (36 Ill. L. & Prac. *Venue* §1, at 2 (1958).) At common law, for purposes of venue, all causes of action were classified as either transitory or local. A transitory action followed the defendant and was not localized to a particular

county. A local action typically involved real estate and could only be brought in the county where the property was located. (*United Biscuit Co. v. Voss Truck Lines, Inc.* (1950), 407 Ill. 488, 502, 95 N.E.2d 439, 446.) At common law a transitory action could be brought in any county where the defendant was found. Our venue statutes have greatly modified these common law rules.

### B. VENUE UNDER THE CODE OF CIVIL PROCEDURE

Section 2—101 through section 2—108 of the Civil Practice Law sets forth the general venue provisions enacted by our legislature. Ill. Rev. Stat. 1991, ch. 110, pars. 2—101 through 2—108.

These sections identify the proper place or places for actions to be filed and tried, provide for the transfer of venue and the fixing of costs of transfer if an improper venue is selected, and contain waiver provisions if a defendant fails to timely object to the venue selected. Our supreme court has recognized that the task of fixing venue is traditionally a legislative function. *Chappelle v. Sorenson* (1957), 11 Ill. 2d 472, 143 N.E.2d 18; *Mapes v. Hulcher* (1936), 363 Ill. 227, 2 N.E.2d 63.

Since it is the plaintiff who commences the action, it is the plaintiff who has the *right* and *obligation* to select a proper forum.

If an improper venue is selected, a timely motion to transfer must be granted as a matter of right. (Ill. Rev. Stat. 1991, ch. 110, par. 2—104.) A plaintiff who files an action in an improper venue without probable cause and in bad faith may be liable for the defendant's attorney fees in addition to the costs of transfer. If the costs of transfer are not timely paid, the action may even be dismissed. Ill. Rev. Stat. 1991, ch. 110, par. 2—107.

Even under the venue statutes, certain actions remain as local actions and must be brought in a particular county. (See *e.g.*, Ill. Rev. Stat. 1991, ch. 110, pars. 2—103(b), (c).) No longer do we have truly transitory actions as we did at common law. While in certain actions there may be more than one county where venue is proper, the statutes limit the plaintiff to the particular forums that are provided. Ill. Rev. Stat. 1991, ch. 110, pars. 2—101, 2—102, 2—103.

The purpose of the venue statutes is to ensure that the case is brought in a convenient forum, a forum convenient to the defendant or the witnesses or both. See *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88.

Before the adoption of intrastate *forum non conveniens* in *Torres v. Walsh* (1983), 98 Ill. 2d 338, 456 N.E.2d 601, a plaintiff who filed his action in compliance with the venue statutes could be confident that the case would be tried in the forum selected. With the adoption of intra-

state *forum non conveniens*, a trial court is required to disregard the legislative determination of convenience that was recognized in *Mosele* and consider the criteria identified in the private-interest/public-interest factors test to determine whether, in that judge's opinion, some other forum might be more convenient. *Brummett v. Wepfer Marine, Inc.* (1986), 111 Ill. 2d 495, 490 N.E.2d 694.

Under this analysis of convenience, compliance with the venue statutes is entitled to little or no weight since the doctrine presupposes that venue is proper in the forum selected but that some other forum where venue is also proper is more appropriate for the trial. *Sunich v. Chicago & North Western Transportation Co.* (1985), 106 Ill. 2d 538, 478 N.E.2d 1362.

There is, however, one section of the venue statutes which has never been considered by our supreme court in its enunciation of the *forum non conveniens* doctrine. Section 2—108 provides:

> "Place of trial. All actions shall be tried in the county in which they are commenced, except as otherwise provided by law." Ill. Rev. Stat. 1991, ch. 110, par. 2—108.

This statute appears to legislatively mandate a trial in the forum chosen by the plaintiff if that forum was chosen in compliance with the venue statutes. We will now discuss the history and construction of section 2—108.

### C. THE HISTORY AND CONSTRUCTION OF SECTION 2—108

The original statute from which section 2—108 was derived was adopted during Illinois territorial days. On February 3, 1809, the Congress of the United States passed the "Act Establishing the Territory of Illinois." (See 26 Stat. 514 (1809).) Section 4 of the "Act Establishing the Territory of Illinois" adopted those portions of an "Ordinance for the Government of the Territory of the United States Northwest of the River Ohio" relating to legislative authority. Ordinance of 1787, Act of Congress (July 13, 1787) (U.S. Rev. Stat. 2d ed. 1787, at 13) (hereinafter referred to as the Northwest Ordinance).

Under the applicable portions of the Northwest Ordinance, the governor and judges of the Territory enjoyed legislative authority pending the election of a Territorial Legislature. (Northwest Ordinance, par. 5.) Pursuant to such authority, the governor and judges of the Illinois Territory passed on July 20, 1809, "An Act Concerning the General Court." Laws of the Territory of Illinois (July 20, 1809) (Bulletin of the Illinois State Historical Library (vol. 1, June 1906), "Laws of the Territory of Illinois 1809-1811") (hereinafter referred to as the Original General Court Act).

Section 1 of the Original General Court Act provided:

"Be it enacted by the governor and judges of the Illinois Territory and it is hereby enacted by authority of same; that there shall annually be held four terms of the general court, two of which shall be held in the town of Kaskaskia, in the County of Randolph, on the second Mondays of April and September, and two shall be held in Cahokia, in the County of St. Clair, on the fourth Mondays in April and September."

Section 3 of the Original General Court Act is the legislative provision from which section 2—108 was derived. It provided:

"All suits and process of a civil and criminal nature shall be tried and determined in the county in which such suit or process originated."

By 1812, a General Assembly had been elected in the Territory of Illinois, and pursuant to the authority of the Northwest Ordinance which still governed, the Illinois Territorial Legislature passed a statute declaring what laws were in force in the Illinois Territory. (See "An Act Declaring What Laws are in Force in the Illinois Territory" (Laws of the Territory of Illinois, first session of the Legislative Counsel and House of Representatives (December 13, 1812)).) Section 2 of this act provided as follows:

"That all the laws passed by the governor and judges of the Territory of Illinois which remain unrepealed by them are declared to be in full force and effect within this Territory, and so to remain until altered or repealed by the Legislature."

At the time that this statute was passed, the governor and judges had not altered or repealed section 3 of the Original General Court Act. In December of 1813, the Territorial Legislature mandated the transfer of those cases pending in Cahokia to Kaskaskia for disposition. This was accomplished by the passage of an "Act Regulating the General Court." Laws of the Territory of Illinois, second session of the Legislative Counsel and House of Representatives (December 10, 1813) (hereinafter referred to as the General Court Act of 1813).

Section 41 of the General Court Act of 1813 declared that the general court at Cahokia would continue to operate until November 1 of 1814 at which point the papers, books, and proceedings at Cahokia would be transferred to Kaskaskia for disposition. In December of 1814, the Territorial Legislature recognized that by virtue of this transfer, the mandates of section 3 of the Original General Court Act would be violated. This conflict was eliminated by the passage of "Act Establishing a Supreme Court for the Illinois Territory." (Laws of the Illinois Territory,

third session of the Legislative Counsel and House of Representatives (December 13, 1814).) Section 7 of this act provided:

> "All suits shall be tried in the county in which they originate, unless in cases that are or may be otherwise specially provided for by law, and in all cases except those hereinafter mentioned, one of the judges shall be sufficient to constitute a court."

A careful reading of this section demonstrates that the legislature had modified the language from that which was contained in section 3 of the Original General Court Act of 1809. In particular, the phrase "unless in cases that are or may be otherwise specially provided for by law" was added. This was necessary because of the transfer of all the business at the Cahokia court to Kaskaskia effective November 1, 1814. By adding the clause "unless in cases that are or may be otherwise specially provided for by law," the Territorial Legislature harmonized the two statutes.

In 1818, Illinois was admitted to the Union. Thereafter, the State legislature amended the statute in question on several occasions. In 1829, the legislature passed an "Act Regulating the Supreme and Circuit Courts." (Laws of the State of Illinois (January 19, 1829).) Section 21 of this statute provided:

> "All suits brought in said circuit court shall be tried in the county in which they originated, unless in cases that are or may be specially provided for by law."

Here the legislature had simply added the words "circuit court" to the statute. Thereafter, in 1874 the statute was again amended to provide:

> "All suits shall be tried in the counties in which they are instituted, except as otherwise provided by law." "An Act to revise the law in relation to circuit courts, and the superior court of Cook County," section 25, Statutes of Illinois, General Laws of the State, approved February 16, 1874, in force July 1, 1874 (Rev. Stat., ch. 37, sec. 42 (Hurd 1874)).

Here the words "circuit court" were deleted; the word "originated" was changed to "instituted"; and the phrase "unless in cases that are or may be otherwise specially provided for by law" was changed to "except as otherwise provided by law." By deleting "originated" and substituting "instituted," the legislature clarified the meaning of the statute. Under the version passed in 1874, it was clear that the legislature was mandating that the trial be held in the county in which the case was filed or instituted unless some provision of the law provided otherwise. At present, section 2—108 is identical to the statute passed in 1874 with

only two exceptions. The word "suits" has been changed to "actions," and the word "instituted" has been changed to "commenced."

As pointed out above, the phrase "otherwise provided by law" found its origins in a need to harmonize the Original General Court Act which was adopted in 1809 with the General Court Act which was passed in 1813. Since the General Court Act of 1813 had transferred the cases from Cahokia to Kaskaskia, the legislature needed to amend section 3 of the Original General Court Act to account for this legislative transfer.

We must now determine the meaning of the phrase "except as otherwise provided by law" in section 2—108.

### D. MEANING OF "PROVIDED BY LAW"

The phrase "provided by law" is frequently found in statutes and constitutional provisions in this State and other States. Various authorities have had occasion to construe this phrase and have declared that where the phrase "provided by law" is used in a statute or in a constitutional provision, it refers to a legislative act and not to the common law.

1. "Provided by law. This phrase when used in a constitution or statute generally means prescribed or provided by some statute." Black's Law Dictionary 1102 (5th ed. 1979).

2. "As provided by law" means that an act by the general assembly via the law-making process is envisioned when this phrase is used. *Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 483 N.E.2d 216; *County of Kane v. Carlson* (1986), 140 Ill. App. 3d 814, 489 N.E.2d 467, *aff'd on other grounds* (1987), 116 Ill. 2d 186, 507 N.E.2d 482; *Oak Park Federal Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, 204, 296 N.E.2d 344, 347.

3. See numerous provisions of the Illinois Constitution of 1970, wherein the constitutional commentary accompanying those sections containing the phrase "provided by law" or "required by law" states that it is a legislative function of the General Assembly that is addressed when "provided by law" or "required by law" is used. *E.g.*, Ill. Ann. Stat., 1970 Const., art. VI, §2, Constitutional Commentary, at 392; art. VIII, §2, Constitutional Commentary, at 138-39; art. IX, §4, Constitutional Commentary, at 176 (Smith-Hurd 1971).

4. From other jurisdictions, see the following: *Pace v. Pace Brothers Co.* (1936), 91 Utah 132, 147, 59 P.2d 1, 8, wherein the Utah Supreme Court held that "except as provided by law" did not refer to the "general law," rather the phrase seems to "smack of the flavor of something done by the Legislature"; and *Manchin v. Browning* (1982), 170 W. Va. 779, 785, 296 S.E.2d 909, 915, wherein it was held that "provided by law" means prescribed or provided by statute.

■ The foregoing analysis of section 2—108 indicates to us that the legislature of the State of Illinois has mandated that the trial of a case is to be held in the county in which the case is filed, unless some statutory provision mandates or permits the case to be transferred elsewhere. We are not alone in this interpretation of section 2—108. The only other court ever to construe this statute in terms of a *forum non conveniens* analysis was a pre-*Torres* decision entitled *Precision Components, Inc. v. Estate of Kuntz* (1983), 112 Ill. App. 3d 309, 445 N.E.2d 449. In *Precision* the court stated: "In general, unless suit is filed in the wrong venue, the action must be tried in the county in which it is commenced." (*Precision*, 112 Ill. App. 3d at 310, 445 N.E.2d at 450.) Shortly after the *Precision* case was decided, our supreme court, without mention of section 2—108, decided the case of *Torres* and adopted the doctrine of intrastate *forum non conveniens.*

### E. THE EFFECT OF SECTION 2—108 UPON THE DOCTRINE OF INTRASTATE *FORUM NON CONVENIENS*

In construing section 2—108, we must be guided by the teachings of our supreme court. In *Torres,* the court instructed us that there is no statutory authority in the State of Illinois for the adoption of intrastate *forum non conveniens.* The supreme court also declared that the sole authority for the adoption of intrastate *forum non conveniens* in Illinois was the fact that English common law was in effect in this State.

In Illinois, common law is in force solely by virtue of a legislative act. Our supreme court has stated:

" 'The common law of England, so far as the same is applicable, and of a general nature, and all statutes or acts of British parliament, made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First' (with certain specified exceptions), 'and which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as in full force, until repealed by legislative authority.' [Quoting "sec. 1, ch. 28, R.S. of this State."] This statute, without the exceptions, was passed by the general convention of the colony of Virginia, May, 1776, [citation] and in its present form was carried into the legislation of the Indiana Territory, by the act of September 7th, 1807, [citation] was in force in the Territory of Illinois [citation] and was re-enacted by the first State legislature, by act of February 4th, 1819, [citation] and has been retained in the same form in each succeeding revision of the statute." *Bulpit v. Matthews* (1893), 145 Ill. 345, 350, 34 N.E. 525, 526.

This same statute is still in force today and is found in section 1 of "An Act to revise the law in relation to the common law" (Ill. Rev. Stat. 1991, ch. 1, par. 801).

■ Given the fact that intrastate *forum non conveniens* is a product of the adoption of common law, and given the fact that the Illinois legislature is the entity that was responsible for the adoption of common law, the legislature, therefore, is free to modify the common law in any respect it sees fit. This has been often recognized by the courts of this State. *People v. Gersch* (1990), 135 Ill. 2d 384, 553 N.E.2d 281; *People v. Davis* (1953), 1 Ill. 2d 597, 116 N.E.2d 372.

We are aware of the general rule which requires statutes in derogation of the common law to be strictly construed. This rule does not apply to section 2—108 or any of the other provisions of our Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 1—106).

Virtually our entire code of civil procedure is in derogation of the common law. Certainly our venue statutes abolish the common law concept that a transitory action can be brought wherever the defendant is found. Instead, a plaintiff is directed by statute to bring his action in one of the specified venues. We believe it is fair to conclude that the legislature intended that if the venue statutes were complied with, a suit would not be susceptible to a court-fashioned rule of convenience that ignores the legislative determination of convenience found in our venue statutes. To make this clear, our legislature has adopted section 2—108 as the law of this State. Any other conclusion would render section 2—108 a useless and meaningless statute.

If section 2—108 means what it says and if we and the court in *Precision* are correct, then all actions must be tried in the county in which they are filed unless some statute mandates or permits the transfer of the case to a different county. The first instance in which such a statute mandated a transfer was in 1813 when the Illinois Territorial Legislature transferred the cases from Cahokia to Kaskaskia. Other statutes today similarly provide for a transfer. See, *e.g.*, Ill. Rev. Stat. 1991, ch. 110, pars. 2—106, 2—1001.

However, we need not decide today whether the doctrine of intrastate *forum non conveniens* has been abrogated by statute. We believe that is a decision best left to our supreme court.

In *Welsh v. James* (1950), 408 Ill. 18, 95 N.E.2d 872, our supreme court applied a common law rule in reaching its decision. At the time of the *Welsh* decision, there was in force a statute that changed the common law rule (Ill. Rev. Stat. 1939, ch. 3, par. 167). However, no party cited the statute to the court. This resulted in a decision that did not consider the statutory law in effect at that time. Later, in *Bradley v.*

*Fox* (1955), 7 Ill. 2d 106, 129 N.E.2d 699, the issue arose again, and on that occasion the statutory authority was made known to the court. With this background the court ruled as follows:

> "Thus, inasmuch as the authorities relied upon in the *Welsh case* did not at the time constitute the law, \*\*\* it is incumbent upon this court to consider the issue anew, and evolve a proper rationale." *Bradley*, 7 Ill. 2d at 112, 129 N.E.2d at 703.

■ Despite the fact that we have called on the supreme court to clarify this issue, we believe that it is proper to rule at this time and we so hold that if a plaintiff complies with the venue statute, given the mandate of section 2—108 the plaintiff's choice of forum is entitled to great deference and should only be disturbed for the most compelling reasons. We, therefore, affirm the circuit court's denial of the defendants' motion for this independent, and additional, reason.

Since this is a matter of first impression and a matter of great importance, we would be inclined to grant an application for a certificate of importance if requested. Supreme Court Rule 316 (134 Ill. 2d R. 316).

CONCLUSION

Accordingly, the order of the circuit court denying the defendants' intrastate *forum non conveniens* motion is affirmed, and the cause is remanded.

Affirmed and remanded.

GOLDENHERSH, J., concurs.

JUSTICE LEWIS, specially concurring:

Many attorneys and circuit judges do not realize the considerable amount of time that an appellate judge spends ruling on various motions and petitions. One of the most common petitions and probably the most time-consuming petition to the appellate courts is the petition for leave to appeal under Supreme Court Rule 306(a)(1)(ii) (134 Ill. 2d R. 306(a)(1)(ii)) from an order entered as to *forum non conveniens*.

The battle over the forum is also very costly and time consuming for the circuit courts and the litigants. I will leave the research, as to what the cost is to the taxpayers and the litigants, to some enterprising law professor or student. Suffice it to say that any time an appeal can be taken before trial of a cause there has to be a delay in the litigation that costs all the parties and the taxpayers. See McAllen, *Deference to the Plaintiff in Forum Non Conveniens*, 13 S. Ill. U. L.J. 191 (1989) (for an

extensive history, criticism and recommendation for change as to *forum non conveniens*).

What the appellate courts are confronted with in these appeals are reviews of the trial judge's decision as to whether witnesses have better access to the forum from Lambert International Airport in St. Louis than they have from some regional or local airport. In this case we had to decide if St. Clair County can try the case as quickly as Pike County and whether the trial judge erred in deciding that the jury might be helped by viewing the pipeline-storage facility. The battle over the forum results in a battle over minutiae.

Justice Joseph Goldenhersh was clairvoyant when he wrote in his dissent in the *Torres* case:

> "I need not lengthen this dissent by pointing out the confusion which the utter disregard of the venue statutes evidenced by this opinion will cause in the administration of justice in this jurisdiction. To destroy in one stroke the stability created by a long history of deference to legislative governance of venue is an unfortunate mistake which should be immediately corrected." *Torres v. Walsh* (1983), 98 Ill. 2d 338, 355, 456 N.E.2d 601, 609 (Goldenhersh, J., dissenting).

We now find out that somehow the intent of the legislature, as expressed in section 2—108, has been overlooked by the courts this past decade. (Ill. Rev. Stat. 1991, ch. 110, par. 2—108 (now 735 ILCS 5/2—108 (West 1992)).) The majority opinion allows the supreme court of Illinois to rectify this oversight, if it so desires.

It is not our intent to be presumptuous or disrespectful toward the supreme court. The section 2—108 discussion in the majority opinion obviously can be ignored by the court if it so chooses. Perhaps, however, the supreme court is looking for a way out of the quagmire of *forum non conveniens* and has not had a good reason or opportunity to reconsider the doctrine. The issue is now respectfully tendered to the proper forum.